**LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA, and Citizen Action/Pennsylvania Chapter, and Consumers Education And Protective Association, Petitioners**

v.

**COMMONWEALTH of Pennsylvania, and Thomas J. Ridge, Governor, and Catherine Baker Knoll, Treasurer, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 1996.

Decided April 1, 1997.

---

264

Eric B. Schnurer, Harrisburg, for petitioners.

Calvin R. Koons, Senior Deputy Attorney General, and Gregg R. Melinson, Deputy General Counsel, Harrisburg, for respondents.

Christopher B. Craig and Linda J. Shorey, Harrisburg, for intervenors, Senator Loeper, et al.

Before COLINS, President Judge, and DOYLE, PELLEGRINI, FRIEDMAN, KELLEY, FLAHERTY and LEADBETTER, JJ.

KELLEY, Judge.

The present case concerns the validity of the General Appropriations Act of 1996 (Act 1A) in light of actions taken in the General Assembly during the passage of Senate Bill No. 1583, which ultimately became Act 1A. On July 24, 1996, the League of Women Voters of Pennsylvania, Citizen Action/Pennsylvania Chapter and Consumers Education and Protective Association (collectively, petitioners) filed a four-count petition for review in the nature of a bill in equity (petition for review) addressed to this court's original jurisdiction. Preliminary objections to the petition for review were filed by the Commonwealth of Pennsylvania, Governor Thomas J. Ridge and Treasurer Catherine Baker Knoll

(collectively, respondents). Preliminary objections to the petition for review were also filed by Senators F. Joseph Loeper, Richard A. Tilghman and Vincent J. Fumo (collectively, Loeper intervenors).[1]

On September 9, 1996, petitioners filed a four-count amended petition for review in the nature of a bill in equity (amended petition for review) addressed to this court's original jurisdiction. In the first three counts of the amended petition for review, petitioners allege that the General Assembly violated mandatory provisions of the Pennsylvania Constitution when it enacted Act 1A because a Committee of Conference (Conference Committee) purported to introduce changes to individual line item appropriations that went beyond the scope of disagreement between the two chambers of the General Assembly. In the fourth count of the amended petition for review, petitioners allege that the Conference Committee violated the Sunshine Act[2] when it compiled an extensive report containing numerous changes to Senate Bill No. 1583 prior to the Conference Committee's first public meeting.

Petitioners request from this court a declaration that Act 1A was unconstitutionally or unlawfully enacted or, in the alternative, that those portions of Act 1A which were inserted by the Conference Committee were unconstitutionally enacted. They further request that respondents be enjoined from performing the provisions of Act 1A.[3]

Respondents and the Loeper intervenors filed preliminary objections to the amended

---

1. On August 21, 1996, Senators F. Joseph Loeper, Richard A. Tilghman and Vincent J. Fumo filed a petition for leave to intervene in this case. Senator Loeper is the Majority Leader of the Senate and served as a member of the Committee of Conference on Senate Bill No. 1583. Senator Tilghman is the Chairman of the Senate Committee on Appropriations and served as a member of the Committee of Conference on Senate Bill No. 1583. Senator Fumo is the Minority Chairman of the Senate Committee on Appropriations and served as a member of the Committee of Conference on Senate Bill No. 1583. The Loeper intervenors support the views of the named respondents, arguing in favor of the validity of Act 1A.

Following a hearing, this court, by order dated September 9, 1996, granted the Loeper intervenors' petition for leave to intervene in this case.

2. Act of July 3, 1986, P.L. 388, *as amended*, 65 P.S. §§ 271—286.

3. On July 30, 1996, petitioners filed an application for preliminary injunctive and declaratory relief, pending a resolution of this case on the merits. Petitioners then filed an amended application for preliminary injunctive and declaratory relief. A hearing was held before this court on September 9, 1996. By order dated September 12, 1996, the chancellor denied petitioners' application for a preliminary injunction. *League of Women Voters v. Commonwealth*, 683 A.2d 685 (Pa.Cmwlth.1996) (single judge opinion by Colins, P.J.).

petition for review. Those preliminary objections are now before this court for disposition.[4]

The parties in this case have not stipulated to facts relating to the enactment of Act 1A. However, this court can take judicial notice of the Legislative Journals, as well as the various versions of Senate Bill No. 1583, the bill ultimately enacted as Act 1A. For purposes of ruling on the preliminary objections which are now before us, we shall adopt the facts as set forth by the chancellor in his opinion on petitioners' application for preliminary injunctive and declaratory relief. *See League of Women Voters v. Commonwealth*, 683 A.2d at 687.

## I. FACTS

1. On June 4, 1996, Senate Bill No. 1583, Printer's No. 2074, was introduced in the Pennsylvania Senate and referred to the Senate Committee on Appropriations.

2. Senate Bill No. 1583 was reported as committed by the Senate Committee on Appropriations and was passed by the Senate on June 10, 1996 by a vote of 32–17.

3. Senate Bill No. 1583 was then sent to the House of Representatives. Following committee consideration and floor amendments, Senate Bill No. 1583, now bearing Printer's No. 2157, was passed by the House of Representatives on June 13, 1996 by a vote of 165–26.

4. On June 17, 1996, Senate Bill No. 1583, Printer's No. 2157, was referred to the Senate Committee on Rules and Executive Nominations.

5. On June 26, 1996, the Senate Committee on Rules and Executive Nominations voted to discharge Senate Bill No. 1583, Printer's No. 2157, to the full Senate with a

recommendation that the Senate not concur in the House amendments.

6. On June 26, 1996, the Senate voted not to concur in the House amendments.

7. On June 26, 1996, the House of Representatives voted to insist upon its amendments.

8. On June 27, 1996, the Senate appointed Senators Loeper, Tilghman and Fumo and the House appointed Representatives Ryan, Pitts and Evans as members of a Conference Committee on Senate Bill No. 1583.

9. The Conference Committee convened on June 27, 1996 and adopted a pre-prepared conference report by a vote of 5–1, with Representative Evans being the sole dissenter.

10. On June 27, 1996, the Conference Committee Report on Senate Bill No. 1583, now bearing Printer's No. 2212, was adopted by the full Senate by a vote of 36–13. On June 28, 1996, Senate Bill No. 1583 was adopted by the House of Representatives by a vote of 113–88.

11. On June 29, 1996, Governor Ridge signed the bill into law.

We shall first discuss the amended petition for review filed by petitioners. We shall then discuss the preliminary objections to the amended petition for review filed by respondents and the Loeper intervenors.

## II. AMENDED PETITION FOR REVIEW

On September 9, 1996, petitioners filed with this court their four-count amended petition for review which is addressed to this court's original jurisdiction. In Count I of the amended petition for review, petitioners allege that the Conference Committee exceeded the scope of its authority and violated Article III, Section 5 of the Pennsylvania Constitution[5] by purporting to insert in Sen-

---

**4.** On December 4, 1996, a brief of amicus curiae in opposition to the preliminary objections of respondents was filed by Common Cause of Pennsylvania.

**5.** Article III, Section 5 of the Pennsylvania Constitution provides as follows:
 No amendment to bills by one House shall be concurred in by the other, except by the vote of a majority of the members elected

thereto, taken by yeas and nays, and the names of those voting for and against recorded upon the journal thereof; and reports of committees of conference shall be adopted in either House only by the vote of a majority of the members elected thereto, taken by yeas and nays, and the names of those voting recorded upon the journals.

ate Bill No. 1583 amendments which went beyond the scope of disagreement between the two chambers of the General Assembly and which were not included in Senate Bill No. 1583 as already adopted by the Senate and the House of Representatives. In Count II of the amended petition for review, petitioners allege that the Senate and the House of Representatives violated Article III, Section 5 of the Pennsylvania Constitution by adopting amendments to Senate Bill No. 1583 which went beyond the scope of disagreement between the two chambers of the General Assembly and which were not included in Senate Bill No. 1583 as already adopted by the Senate and the House of Representatives. In Count III of the amended petition for review, petitioners allege that Article II, Section 1 and Article III, Sections 2 and 4 of the Pennsylvania Constitution [6] were violated when the Senate and the House of Representatives were prohibited from voting on the Conference Committee's proposed amendments to Senate Bill No. 1583 without also per se rejecting Senate Bill No. 1583 as already constitutionally adopted by the Senate and the House of Representatives. In Count IV of the amended petition for review, petitioners allege that the Conference Committee violated the Sunshine Act by compiling an extensive report containing numerous changes to Senate Bill No. 1583 prior to the Conference Committee's first public meeting.

## III. PRELIMINARY OBJECTIONS OF RESPONDENTS AND LOEPER INTERVENORS

Respondents and the Loeper intervenors have filed with this court preliminary objec-

tions to the amended petition for review. They assert that:

1. Petitioners lack standing to bring Counts I, II and III of the amended petition for review.

2. The claims set forth in the amended petition for review are non-justiciable pursuant to the Enrolled Bill Doctrine, the Separation of Powers Doctrine, the Political Question Doctrine and the Speech and Debate Clause of the Pennsylvania Constitution.

3. Petitioners have failed to state a claim in Counts I–IV of the amended petition for review for which relief may be granted.

In addition, respondent Governor Thomas J. Ridge and the Loeper intervenors have asserted that Count IV of the amended petition for review is untimely because the amended petition for review was not verified until after the statute of limitations had expired. Respondents and the Loeper intervenors have asked this court to dismiss the amended petition for review.

 Preliminary objections, the end result of which would be dismissal of a cause of action, should be sustained only in cases that are clear and free from doubt. *Bower v. Bower*, 531 Pa. 54, 611 A.2d 181 (1992). The test is whether it is clear from all of the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his or her right to relief. *Firing v. Kephart*, 466 Pa. 560, 353 A.2d 833 (1976). In ruling on preliminary objections, all well-pleaded facts in the petition for review and all inferences reasonably deducible therefrom must be accepted as true. *Pennsylvania Dental Hy-*

---

**6.** Article II, Section 1 of the Pennsylvania Constitution provides as follows:

The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives.

Article III, Section 2 of the Pennsylvania Constitution provides as follows:

No bill shall be considered unless referred to a committee, printed for the use of the members and returned therefrom.

Article III, Section 4 of the Pennsylvania Constitution provides as follows:

Every bill shall be considered on three different days in each House. All amendments made thereto shall be printed for the use of the members before the final vote is taken on the bill and before the final vote is taken, upon written request addressed to the presiding officer of either House by at least twenty-five per cent of the members elected to that House, any bill shall be read at length in that House. No bill shall become a law, unless on its final passage the vote is taken by yeas and nays, the names of the persons voting for and against it are entered on the journal, and a majority of the members elected to each House is recorded thereon as voting in its favor.

*gienists' Association v. State Board of Dentistry,* 672 A.2d 414 (Pa.Cmwlth.1996).

Initially, respondents and the Loeper intervenors object to the amended petition for review on the grounds that petitioners lack standing to bring Counts I, II and III.[7] The Loeper intervenors assert that the amended petition for review does not contain any allegation that petitioners, or their individual members, sustained a direct, immediate and substantial injury which was causally connected to the alleged constitutional violations by the General Assembly in the enactment of Act 1A. The Loeper intervenors further assert that no exceptional circumstances exist which would warrant the granting of taxpayer standing to petitioners. In light of the fact that we need not reach petitioners' constitutional claims if petitioners do not have standing to raise them, we shall begin by considering the standing issue.

## A. STANDING

We begin our analysis by pointing out that the parameters of taxpayer standing in this Commonwealth have been defined by our Supreme Court in the seminal case of *Application of Biester,* 487 Pa. 438, 409 A.2d 848 (1979). In that case, our Supreme Court stated as follows:

> The purpose of the requirement of standing is to protect against improper plaintiffs ... A plaintiff, to meet that requirement, must allege and prove an interest in the outcome of the suit which surpasses "the common interest of all citizens in procuring obedience to the law." *Wm. Penn Parking Garage v. City of Pittsburgh,* 464 Pa. 168, 192, 346 A.2d 269, 281 (1975) ... To surpass the common interest, the interest is required to be, at least, substantial, direct, and immediate. *Wm. Penn, supra.*

*Biester,* 487 Pa. at 442–43, 409 A.2d at 851. In *Biester,* our Supreme Court overruled a long line of cases which did not require a taxpayer to allege an injury distinct from that of the general public. *See Consumer*

*Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 168, 507 A.2d 323, 328 (1986).

At the same time, our Supreme Court in *Biester* carved out a narrow exception to the general rule that in order to obtain standing a plaintiff must establish an interest which surpasses the common interest of all citizens. Our Supreme Court emphasized that certain cases exist in which the facts warrant the granting of standing to taxpayers where their interests arguably are not substantial, direct and immediate. *Biester,* 487 Pa. at 444, 409 A.2d at 852; *Consumer Party,* 510 Pa. at 168, 507 A.2d at 328. The relaxing of those interest requirements in certain cases where there is little causal connection between the action complained of and the alleged injury is best explained by the basic policy considerations underlying taxpayer standing. *Consumer Party,* 510 Pa. at 168–69, 507 A.2d at 328. Our Supreme Court articulated these policy considerations in *Biester* as follows:

> The ultimate basis for granting standing to taxpayers must ... be sought outside the normal language of the courts. Taxpayers' litigation seems designed to enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement. Such litigation allows the courts, within the framework of traditional notions of 'standing,' to add to the controls over public officials inherent in the elective process the judicial scrutiny of the statutory and constitutional validity of their acts.

*Biester,* 487 Pa. at 443 n. 5, 409 A.2d at 851 n. 5, quoting Note, Taxpayers' Suits: A Survey and Summary, 69 Yale L.J. 895, 904 (1960).

In *Biester,* our Supreme Court held that a taxpayer seeking standing to sue must allege a substantial, direct and immediate interest in the outcome of the suit unless the taxpayer can show:

---

**7.** We note that respondents have not presented any argument with respect to this issue in their brief before this court despite having included it in their preliminary objections to the amended petition for review. Argument on the standing issue is, however, presented in the brief of the Loeper intervenors.

1. the governmental action would otherwise go unchallenged;
2. those directly and immediately affected by the complained of expenditures are beneficially affected and not inclined to challenge the action;
3. judicial relief is appropriate;
4. redress through other channels is unavailable; and
5. no other persons are better situated to assert the claim.

*Biester, Consumer Party,* 510 Pa. at 170, 507 A.2d at 329.

■ We conclude that the circumstances of the present case warrant the granting of standing to petitioners under the narrow exception set forth in *Biester.* We believe that the actions taken by the General Assembly in passing Senate Bill No. 1583 would likely go unchallenged but for the present proceeding, because the very individuals who enacted such legislation are not going to be inclined to challenge the constitutionality of the process by which Act 1A was enacted. We further believe that judicial relief is appropriate because the function of the judiciary is to serve as the ultimate interpreter of the Pennsylvania Constitution and to invalidate legislative action which is repugnant to it. *Zemprelli v. Daniels,* 496 Pa. 247, 255–56, 436 A.2d 1165, 1169 (1981).

In the present case, redress through other channels is unavailable. There is no administrative agency which can provide relief and the members of the General Assembly, themselves, are unlikely to provide a meaningful mechanism for redress. Finally, we believe that there are no other persons better situated to assert the constitutional claims which have been raised in the present case than petitioners. We note that this court has stated that a designation of funds for some purpose does not create, in itself, any rights to those funds. *Grippo v. Dunmore School Board,* 27 Pa.Cmwlth. 507, 365 A.2d 678 (1976). Any right to payment must arise from a contract, not an appropriation. *Id.* As such, there are no possible plaintiffs who can assert a substantial, direct and immediate interest in the enactment of Act 1A by the General Assembly.

Accordingly, we conclude that petitioners have standing to raise the constitutional claims which they have set forth in Counts I, II and III of their amended petition for review. Having reached such a conclusion, we now turn to petitioners' allegations that the General Assembly violated mandatory provisions of the Pennsylvania Constitution when it enacted Act 1A.

## B. ALLEGED CONSTITUTIONAL VIOLATIONS

In Counts I, II and III of the amended petition for review, petitioners allege that the procedure by which the General Assembly enacted Act 1A violated Article II, Section 1 and Article III, Sections 2, 4 and 5 of the Pennsylvania Constitution. As already noted by the chancellor in this case, these alleged constitutional violations all relate to actions taken by the Conference Committee during the passage of Senate Bill No. 1583 and are premised on a finding that the actions of the Conference Committee violated Article III, Section 5 of the Pennsylvania Constitution. *See League of Women Voters v. Commonwealth,* 683 A.2d at 688.

Petitioners specifically assert that the General Assembly violated Article III, Section 5 when it enacted Act 1A because the Conference Committee introduced changes to individual line item appropriations that went beyond the scope of disagreement between the two chambers of the General Assembly. Petitioners assert that a Conference Committee is not constitutionally permitted to add new material to legislation or to go outside the parameters of disagreement between the two chambers of the General Assembly, but rather may only make adjustments to work out existing differences in versions of a bill which have been passed by the Senate or the House of Representatives.

■ We initially point out that acts of the General Assembly enjoy a strong presumption of constitutionality, and the party challenging an act has a heavy burden of persuasion. 1 Pa.C.S. § 1922(3); *Pennsylvania Liquor Control Board v. Spa Athletic Club,* 506 Pa. 364, 370, 485 A.2d 732, 735 (1984). Legislation will not be invalidated unless it

clearly, palpably and plainly violates the Pennsylvania Constitution, and any doubts are to be resolved in favor of a finding of constitutionality. *Pennsylvania Liquor Control Board*, 506 Pa. at 370, 485 A.2d at 735.

To preserve the delicate balance which is critical to the proper functioning of a tripartite system of government, our Supreme Court has exercised judicial restraint to avoid an intrusion upon the prerogatives of a sister branch of government. *Consumer Party*, 510 Pa. at 176–77, 507 A.2d at 332. Pursuant to this principle, our Supreme Court has rejected challenges to the procedural regularity of the passage of legislation on the grounds that the matter is non-justiciable under the Enrolled Bill Doctrine.[8] *Id.* at 77, 507 A.2d at 332. As explained in *Kilgore v. Magee*, 85 Pa. 401, 412 (1877), the Enrolled Bill Doctrine provides that:

> [W]hen a law has been passed and approved and certified in due form, it is no part of the duty of the judiciary to go behind the law as duly certified to inquire into the observance of form in its passage. . . . The presumption in favor of regularity is essential to the peace and order of the state.

■ While the Enrolled Bill Doctrine operates as an appropriate means of judicial restraint to avoid intrusion by the judiciary into the prerogatives of a co-equal branch of government, the legitimacy of such abstention is dependent upon the situation presented. *Common Cause v. Commonwealth*, 668 A.2d 190, 195 (Pa.Cmwlth.1995), *aff'd per curiam*, 544 Pa. 512, 677 A.2d 1206 (1996); *Consumer Party*, 510 Pa. at 177, 507 A.2d at 333. The countervailing concern is the judiciary's mandate to insure that government functions within the bounds of constitutional prescription. *Consumer Party*, 510 Pa. at 177, 507 A.2d at 333. The judiciary may not

abdicate this responsibility under the guise of its deference to a co-equal branch of government. *Id.* at 177–78, 507 A.2d at 333.

Our Supreme Court has stated that "[w]hile it is appropriate to give due deference to a co-equal branch of government as long as it is functioning within constitutional constraints, it would be a serious dereliction on our part to deliberately ignore a clear constitutional violation." *Id.* at 178, 507 A.2d at 333; *Common Cause*, 668 A.2d at 195. In considering whether the enactment of the Public Official Compensation Law (Compensation Law) [9] violated Article III of the Pennsylvania Constitution, our Supreme Court further stated in *Consumer Party* as follows:

> We agree with the Attorney General that we must not inquire into every allegation of procedural impropriety in the passage of legislation. However, where the facts are agreed upon and the question presented is whether or not a violation of a mandatory constitutional provision has occurred, it is not only appropriate to provide judicial intervention, and if warranted a judicial remedy, we are mandated to do no less.

510 Pa. at 180, 507 A.2d at 334. In *Consumer Party*, our Supreme Court determined that judicial scrutiny of the enactment of the Compensation Law was warranted.

Similarly, in *Common Cause*, this court determined that it was appropriate to analyze the procedure employed by the General Assembly in the passage of the General Appropriations Act of 1995–96(GAA) to determine whether it complied with the mandates of Article III of the Pennsylvania Constitution. In that case, Common Cause of Pennsylvania filed a petition for review in this court's original jurisdiction attacking on constitutional grounds the procedure by which the General Assembly enacted the GAA.[10]

---

8. An enrolled bill is a bill which has been certified by the Speaker of the House and the presiding officer of the Senate as having passed the General Assembly, which has been signed by the Governor, and which has been filed with the Secretary of the Commonwealth. *See Parker v. Department of Labor and Industry*, 115 Pa. Cmwlth. 93, 540 A.2d 313, 327 (1988), *aff'd per curiam*, 521 Pa. 531, 557 A.2d 1061 (1989); Rob-

ert E. Woodside, Pennsylvania Constitutional Law, 348 (1985).

9. Act of September 30, 1983, P.L. 160, *as amended*, 65 P.S. §§ 366.1—366.5b.

10. In its petition for review, Common Cause asserted that House Bill No. 1169, which ultimately became the GAA, was not a general ap-

This court determined that the enactment of the GAA was in violation of numerous *mandatory* provisions of the Pennsylvania Constitution. *Common Cause*, 668 A.2d at 199. As such, while this court denied the application of Common Cause for permanent injunctive relief with respect to the entire GAA, we did permanently enjoin the expenditure of unconstitutional appropriations and grant a prospective declaratory judgment in favor of Common Cause. *Id.* at 207.

■ In *Common Cause*, this court could not abstain from considering, in deference to a co-equal branch of government, allegations that the General Assembly had clearly violated mandatory provisions of the Pennsylvania Constitution in the enactment of the GAA. However, unlike *Common Cause*, the present case does not involve clear violations of mandatory provisions of the Pennsylvania Constitution which would warrant this court's judicial intervention in the legislative process.

For purposes of ruling on the preliminary objections of respondents and the Loeper intervenors, this court must take as true all well-pleaded facts and inferences deducible therefrom. *Dintzis v. Hayden*, 146 Pa. Cmwlth. 618, 606 A.2d 660 (1992). Contrary to the enactment of the GAA by the General Assembly in *Common Cause*, the facts in the present case indicate that Senate Bill No. 1583, which ultimately became Act 1A, was introduced as a general appropriations bill in the Senate. Senate Bill No. 1583 was properly passed, without amendment, by the Senate and was then sent to the House of Representatives. In the House, Senate Bill No. 1583 was debated at length and numerous amendments were made. Senate Bill No. 1583 was then properly passed by the House of Representatives. While the version passed by the House was markedly different from its Senate counterpart, there is no dispute that both versions were general appropriations bills as that term is constitutionally defined. *See Common Cause*, 668 A.2d at 196–97.

The Senate, again pursuant to proper constitutional procedure, voted not to concur in the House amendments, thus triggering the appointment of a Conference Committee. The Conference Committee duly met and adopted a report which included numerous changes to the individual line item appropriations set forth in Senate Bill No. 1583. The Conference Committee Report was then properly adopted in both the Senate and the House of Representatives by the vote of a majority of the members elected thereto. Such a procedure was in full compliance with the mandates of the Pennsylvania Constitution.

Petitioners assert that the authority of the Conference Committee is limited to resolving only those areas of specific disagreement be-

propriations bill as originally introduced. Rather, it was a specific appropriations bill that was unconstitutionally amended during its enactment to become a general appropriations bill in violation of Article III, Sections 3 and 11 of the Pennsylvania Constitution. We note that Article III, Section 3 of the Pennsylvania Constitution clearly mandates that no bill shall contain more than one subject. Common Cause further asserted that the procedure by which the GAA was enacted violated Article III, Section 1 of the Pennsylvania Constitution because House Bill No. 1169 was amended or altered during its passage so as to change its original purpose. Article III, Section 1 of the Pennsylvania Constitution clearly mandates that no bill shall be so altered or amended as to change its original purpose.

In its petition for review, Common Cause asserted that the General Assembly violated Article III, Section 2 of the Pennsylvania Constitution because House Bill No. 1169 was not referred to committee in either chamber of the General Assembly after its substantial amendment in the House Rules Committee. Article III, Section 2 of the Pennsylvania Constitution clearly mandates that no bill shall be considered unless referred to a committee. Furthermore, Common Cause asserted that, because House Bill No. 1169 was not again considered on three different days after its amendment by the House Rules Committee, there was a violation of Article III, Section 4 of the Pennsylvania Constitution. Article III, Section 4 of the Pennsylvania Constitution clearly mandates that every bill shall be considered on three different days in each house of the General Assembly.

In the alternative, Common Cause asserted that if the original version of House Bill No. 1169 could be construed as a general appropriations bill, it would have to be stricken as violative of Article III, Section 3 of the Pennsylvania Constitution. The original title of House Bill No. 1169 was narrowly limited to appropriations to the Public Utility Commission from a restricted account. Common Cause argued that this title did not clearly express the subject of House Bill No. 1169 as a general appropriations bill.

tween the Senate and the House of Representatives. We disagree.

As we have noted, Article III, Section 5 of the Pennsylvania Constitution provides as follows:

> No amendment to bills by one House shall be concurred in by the other, except by the vote of a majority of the members elected thereto, taken by yeas and nays, and the names of those voting for and against recorded upon the journal thereof; and reports of committees of conference shall be adopted in either House only by the vote of a majority of the members elected thereto, taken by yeas and nays, and the names of those voting recorded upon the journals.

This language clearly does not suggest that a Conference Committee can only amend a general appropriations bill to the limited extent that there is specific disagreement between the Senate and the House of Representatives. Rather, Article III, Section 5 only provides that the report of a Conference Committee must be adopted by the General Assembly by the vote of a majority of the members elected thereto. In the present case, this is exactly what transpired.

■ Our Supreme Court has recognized that legislation which emerges from a Conference Committee may materially differ from the bills which were sent to the Conference Committee for consideration. *Consumer Party*, 510 Pa. at 181, 507 A.2d at 334. Moreover, our Supreme Court has stated that "[t]o unduly restrict this process would inhibit the democratic process in its traditional method of reaching accord and would unnecessarily encumber the heart of the legislative process, which is to obtain a consensus." *Id.* While consensus is clearly necessary to permit the enactment of legislation, the Pennsylvania Constitution does not preclude the Conference Committee from going outside the parameters of disagreement between the two chambers of the General Assembly to reach such consensus with respect to a general appropriations bill. In fact, where the legislation at issue is a general appropriations bill, increases in specific line item appropriations necessarily require decreases in other specific line item appropriations. To restrict the flexibility of a Conference Committee to make needed changes to a general appropriations bill is to seriously impede the achievement of consensus.

We note that pursuant to Article II, Section 11 of the Pennsylvania Constitution, each house of the General Assembly has the power to determine the rules of its proceedings. As such, each house has set forth guidelines with respect to the proceedings of a Conference Committee. House of Representatives Rule 48 [11] provides, in part, that "[t]he conferees shall confine themselves to the differences which exist between the House and the Senate." Furthermore, Senate Rule XX [12] provides as follows:

> The deliberations of the [conference] committee shall be confined to the subject of difference between the two houses, unless both Houses shall direct a free conference, and if their authority has been exceeded it shall be the duty of the presiding officer to call it to the attention of the Senate who shall then decide the question by a majority vote of those present.

Thus, we recognize that the proceedings of a Conference Committee are regulated by internal legislative rules. However, it is not the province of this court to judicially scrutinize the General Assembly's adherence to internal legislative rules. Rather, it is the responsibility of this court to insure that our government functions within the bounds of the Pennsylvania Constitution and to provide a remedy for any violation of a mandatory constitutional provision. In the present case, a clear violation of a mandatory constitutional provision is not at issue. Unlike *Common Cause,* petitioners have not alleged that Senate Bill No. 1583 contained more than one subject or that its purpose was changed during the legislative process, both of which are allegations presenting questions of whether mandatory provisions of the Pennsylvania Constitution have been violated.

---

**11.** Rules of the House of Representatives, as adopted January 1, 1995.

**12.** Rules of the Senate of Pennsylvania (operating rules for 1995–96 session).

We point out that Senate Bill No. 1583 was passed by both the Senate and the House of Representatives and was signed into law by Governor Ridge on June 29, 1996. Accordingly, we conclude that judicial scrutiny of petitioners' constitutional claims is barred by the Enrolled Bill Doctrine.

 Similarly, we further conclude that the Enrolled Bill Doctrine precludes this court from reviewing petitioners' allegation of a Sunshine Act violation. In Count IV of their amended petition for review, petitioners allege that the Conference Committee violated the Sunshine Act when it compiled an extensive report containing numerous changes to Senate Bill No. 1583 prior to the Conference Committee's first public meeting.[13] Petitioners' allegation that the Conference Committee violated the Sunshine Act is an alleged statutory violation, not a "clear constitutional violation" of the type contemplated in *Consumer Party* and *Common Cause*. We again point out that Senate Bill No. 1583 was passed by both the Senate and the House of Representatives and was signed into law by Governor Ridge on June 29, 1996. Accordingly, we conclude that the Enrolled Bill Doctrine precludes this court from considering whether the Conference Committee violated the Sunshine Act.[14]

Accordingly, the preliminary objections of respondents and the Loeper intervenors to petitioners' amended petition for review are overruled with respect to the issue of standing and are sustained with respect to the issue of justiciability.[15] Petitioners' amended petition for review is dismissed with prejudice.

### ORDER

NOW, this 1st day of April, 1997, it is hereby ordered:

1. The preliminary objections filed by respondents to the amended petition for review in the nature of a bill in equity filed by petitioners are overruled with respect to the issue of standing and are sustained with respect to the issue of justiciability.

2. The preliminary objections filed by intervenors F. Joseph Loeper, Richard A. Tilghman and Vincent J. Fumo to the amended petition for review in the nature of a bill in equity filed by petitioners are overruled with respect to the issue of standing and are sustained with respect to the issue of justiciability.

3. The amended petition for review in the nature of a bill in equity filed by petitioners is dismissed with prejudice.

---

**13.** We note that petitioners have not presented any argument with respect to this issue in their brief to this court.

**14.** We note with interest that in *Consumers Education and Protective Association v. Nolan*, 470 Pa. 372, 368 A.2d 675 (1977), our Supreme Court considered whether the action of the Senate Committee on Rules and Executive Nominations in referring to the full Senate a gubernatorial nomination to the Public Utility Commission was covered by the Sunshine Act. Following an extensive review of the Sunshine Act, our Supreme Court concluded that it did not apply to executive nominations. *Consumers Education and Protective Association*, 470 Pa. at 388, 368 A.2d at 684. Nonetheless, our Supreme Court noted the following:

> [E]ven were we to agree that the meeting in question was subject to the Sunshine Law so as to invalidate the committee vote there taken,

appellants provide no authority for a judicial holding that the subsequent confirmation vote, taken by the Senate as a whole as provided by the Constitution, was similarly invalid. To the contrary, cf. *Mikell v. Philadelphia School District*, 359 Pa. 113, 58 A.2d 339 (1948); *Kilgore v. Magee*, 85 Pa. 401 (1877).

*Id.* at 390–91, 368 A.2d at 685. Our Supreme Court further noted that Section 681(1) of Mason's Legislative Manual states that "[n]either the right of a committee to consider and report a bill, nor the validity of any action reported by a committee may be questioned after the house has begun its consideration of the bill or other matter reported." *Id.* at 391 n. 11, 368 A.2d at 685 n. 11.

**15.** In light of our conclusions with respect to the issue of justiciability, we need not address the other preliminary objections which have been raised by respondents and the Loeper intervenors.