757 A.2d 917

PENNSYLVANIA AFL–CIO, by William GEORGE and Richard Bloomingdale, Trustees Ad Litem; and Pennsylvania Federation of Injured Workers, Inc.; and Philadelphia Area Project on Occupational Safety and Health, Appellants at No. $^{3\%7}$,

v.

COMMONWEALTH of Pennsylvania and Thomas Ridge, in his Official Capacity as Governor of the Commonwealth of Pennsylvania, and Johnny J. Butler, in his Official Capacity as Secretary of Labor and Industry of the Commonwealth of Pennsylvania, Appellees.

Senators F. Joseph Loeper, Gibson E. Armstrong, Noah W. Wenger, Albertbelan, Gerald J. Lavalle, Richard A. Kasunic and Christine M. Tartaglione, Senate Labor and Industry Committee Democratic Members, Intervenors.

Appeal of Albert V. Belan, Gerald J. Lavalle, Richard A. Kasunic and Christine M. Tartaglione, Senate Labor and Industry Committee Democratic Members, Intervenors at No. 40/97.

Appeal of Senator F. Joseph Loeper, Gibson E. Armstrong and Noah W. Wenger, Intervenors At 46/97.

Supreme Court of Pennsylvania.

Argued Nov. 16, 1998.

Decided Aug. 30, 2000.

Irwin W. Aronson, James A. Diamond, Camp Hill, for AFL–CIO George and Bloomingdale.

Eric B. Schnurer, West Chester, for PA Federation of Injured Workers, et al.

Paul A. Tufano, Gen. Counsel, Gregory E. Dunlap, Deputy Gen. Counsel, Stephanie A. Middleton, for Governor Thomas J. Ridge, et al.

J. Matthew Wolfe, Richard C. Lengler, Thomas Kuzma, Harrisburg, for Johnny J. Butler.

John P. Krill, Jr., Linda J. Shorey, Harrisburg, for intervenors, Loeper, et al.

John J. Broujos, Carlisle, for intervenors, Belan, et al.

D. Michael Fisher, Atty. Gen., for Com. of Pennsylvania.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

NIGRO, Justice.

The issue before this Court is whether the Commonwealth Court erred in sustaining preliminary objections to Appellants' claim that the legislative process used in enacting Senate Bill No. 801 (S.B.801), which ultimately became Act 57 of 1996, violated Article III, Section 5 of the Pennsylvania Constitution. We agree with Appellants that the Commonwealth Court erred in sustaining preliminary objections as to this issue. However, after reviewing the underlying constitutional issue on the merits, as warranted by the circumstances of this case, we conclude that Article III, Section 5 was not violated in the instant matter.

On March 21, 1995, S.B. 801 was introduced in the Pennsylvania Senate and referred to the Senate Committee on Labor and Industry. S.B. 801 was directed at expanding the coverage allowable under the State Workmen's Insurance Fund (SWIF), Act of June 2, 1915, P.L. 762, *as amended*, 77 P.S. §§ 201–395.[1] On January 31, 1996, the Senate Committee on

---

1. As originally introduced, S.B. 801 was entitled "An Act amending the Act of June 2, 1919 (P.L. 762, No. 340), entitled 'An act providing for the creation and administration of a State Fund for the insurance of compensation for injuries to employes of subscribers thereto;' ...

Labor and Industry reported an amended version of S.B. 801, with amendments relating to SWIF, to the full Senate. The full Senate re-referred S.B. 801 to the Senate Appropriations Committee. This Committee further amended the bill, with amendments again relating to the subject of SWIF and a change in the bill's title, and reported the bill to the full Senate on February 7, 1996. On February 12, 1996, the full Senate passed S.B. 801 by a vote of 48 to 0.

The bill was then referred to the Pennsylvania House of Representatives' Committee on Labor Relations. This Committee further amended S.B. 801, with the amendments again limited to the subject of SWIF and the title of the bill, and reported the bill to the full House of Representatives. On May 1, 1996, the House passed S.B. 801, as amended by its Committee on Labor Relations, by a vote of 197 to 0.

Following passage of S.B. 801 by the House, the bill was returned to the Senate and referred to the Senate Committee on Rules and Executive Nominations (Senate Rules Committee). Pursuant to its authority under Senate Rule XIV.5, the Senate Rules Committee further amended S.B. 801 on June 11, 1996.[2] These amendments included changes to the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1—1041.4, and a modification of the bill's title. On June 12, 1996, S.B. 801 was referred to the Senate Committee on Labor and Industry, which reported the bill

broadening the State Workmen's Insurance Fund's permissible coverages."

2. Senate Rule XIV.5 of the Rules of the Senate of Pennsylvania provides:

Any bill or resolution containing House amendments which is returned to the Senate shall be referred to the Committee on Rules and Executive Nominations immediately upon the reading of the message by the clerk. The consideration of any bill or resolution containing House amendments may include the amendment of House amendments by the Committee on Rules and Executive Nominations. The vote on concurring in amendments by the House shall not be taken until said bills or resolutions have been favorably reported, as committed or as amended, by the Committee on Rules and Executive nominations and have been placed on the files of Senators and particularly referred to on their calendars.

without further amendment.[3]   The bill was then re-referred to the Senate Rules Committee, which further amended the bill but retained the amended title, and reported it to the full Senate.   The full Senate then passed S.B. 801 by a vote of 27 to 22.[4]

On June 19, 1996, S.B. 801 was returned to the House of Representatives and referred to the House Committee on Rules, which reported the bill to the full House as committed. By a vote of 106 to 97, the full House passed S.B. 801.[5]   The bill was then signed by the Presiding Officer in both the Senate and the House on June 20, 1996.   Governor Thomas Ridge then signed S.B. 801 into law, and the bill became Act 57 of 1996 (Act 57).

On July 19, 1996, Appellants filed a Petition for Review in the Nature of a Complaint in Equity (Petition for Review) with the Commonwealth Court, addressed to the court's original jurisdiction.   In the Petition for Review, Appellants alleged, *inter alia*, that the General Assembly had violated mandatory provisions of the Pennsylvania Constitution, including Article III, Sections 1–5, when it enacted Act 57.   Pursuant to the Petition for Review, Appellants sought a declaratory judgment that Act 57 was unconstitutional and further requested that Governor Ridge be enjoined from implementing the Act.[6]

3.   Appellants note in their brief that pursuant to the Rules of the Senate, the Senate Committee on Labor and Industry was prohibited from amending the bill as it had already been amended by the Senate Rules Committee.

4.   Again, Appellants observe in their brief that pursuant to the Rules of the Senate, no amendments were permitted to be made by the full Senate.

5.   Appellants again note in their brief that pursuant to the Rules of the House of Representatives of Pennsylvania, no amendments to S.B. 801 were permitted to be made by the House since S.B. 801 was brought to the House floor for a straight up or down vote.

6.   Appellants also filed an application for a preliminary injunction, requesting that Appellees be preliminarily enjoined from implementing Act 57, pending a resolution of the merits of the case.   Following a hearing, the Chancellor denied the application.   *See Pennsylvania AFL–CIO v. Commonwealth*, 683 A.2d 691 (Pa.Commw.1996).

On August 19, 1996, Appellees Commonwealth of Pennsylvania, Governor Ridge and Secretary of Labor Johnny Butler filed preliminary objections in the nature of a demurrer to the Petition for Review, asserting that Appellants had failed to state a claim for which relief could be granted. Pennsylvania State Senators Joseph Loeper, Gibson Armstrong and Noah Wenger (Loeper Intervenors) were granted leave to intervene and also filed preliminary objections to the Petition for Review. In addition to asserting that Appellants had failed to state a cause of action, the Loeper Intervenors also claimed that Appellants' claims in the Petition for Review were non-justiciable pursuant to the Enrolled Bill Doctrine, the Political Questions Doctrine and the Speech and Debate Clause of the Pennsylvania Constitution. Pennsylvania State Senators Albert Belan, Gerald LaValle, Richard Kasunic, and Christine Tartaglione (Belan Intervenors) were also granted leave to intervene and filed a Petition for Review, alleging the same constitutional deficiencies in the General Assembly's enactment of Act 57 as the Appellants' Petition for Review. Both Appellees and the Loeper Intervenors also filed preliminary objections to the Belan Intervenors' Petition for Review.

On April 1, 1997, the Commonwealth Court, sitting en banc, issued an order sustaining in part and denying in part the various preliminary objections filed by Appellees/Loeper Intervenors (collectively Appellees), and dismissed the Petitions for Review. Specifically, the Commonwealth Court overruled Appellees' preliminary objections with respect to the issues of justiciability, finding that the Appellants'/Belan Intervenors' (collectively Appellants) constitutional claims were not barred by the Enrolled Bill Doctrine, the Political Question Doctrine or the Speech and Debate Clause. However, the Commonwealth Court sustained Appellees' preliminary objections with respect to all other issues, finding that the procedure used by the General Assembly in enacting Act 57 had complied with the mandates of Article III, Sections 1–5 of the Pennsylvania Constitution. Both Appellants and Appellees appealed to this Court.

As a threshold issue, Appellees, as cross-Appellants, assert that the Commonwealth Court erred in overruling their preliminary objections with respect to the justiciability of Appellants' constitutional claims. They argue that, contrary to the Commonwealth Court's findings, judicial inquiry into Appellants' claims is barred by the Enrolled Bill Doctrine, the Political Questions Doctrine and the Speech and Debate Clause. We disagree. Instead, we conclude that the Commonwealth Court properly disposed of these issues pursuant to well-developed case law and therefore, affirm the overruling of Appellees' preliminary objections as to the justiciability of Appellants' constitutional claims on the basis of the Commonwealth Court's opinion. *See Pennsylvania AFL–CIO v. Commonwealth*, 691 A.2d 1023, 1030–1034 (Pa.Commw.1997).

In their briefs to this Court, Appellants devote the majority of their argument to their contention that the Commonwealth Court erred in sustaining Appellees' preliminary objections to Appellants' claim that the procedure used by the General Assembly in enacting Act 57 violated Article III, Section 5 of the Pennsylvania Constitution (Article III, Section 5). Given the standard governing appellate review of the propriety of sustaining preliminary objections, we agree with Appellants.

Preliminary objections should be sustained only in cases that are clear and free from doubt. *Bower v. Bower*, 531 Pa. 54, 57, 611 A.2d 181, 182 (1992). In ruling on whether preliminary objections were properly sustained, an appellate court must determine whether it is clear from doubt from all the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish a right to relief. *Commonwealth v. Labor Relations Board*, 545 Pa. 288, 292, 681 A.2d 157, 159 (1996).

Here, in sustaining Appellees' preliminary objections, the Commonwealth Court concluded that Appellants had failed to convince the court that the General Assembly, in enacting Act 57, had violated Article III, Section 5. In reaching this conclusion, however, the Commonwealth Court specifically noted that before the instant case, no Pennsylvania court had

interpreted the language of Article III, Section 5 in a published opinion. In fact, the Commonwealth Court explicitly recognized that more than one interpretation of the language in Article III, Section 5 may be possible. *See Pennsylvania AFL–CIO*, 691 A.2d at 1039 n. 21 (noting that the Supreme Court of Alabama has recognized "one possible interpretation of the constitutional language at issue in the present case").

Given these circumstances, we agree with Appellants that the Commonwealth Court erred in finding that Appellees had met their burden of demonstrating that the law interpreting Article III, Section 5 is clear and free from doubt, as is required to prevail on preliminary objections. Thus, we conclude that the Commonwealth Court improperly sustained Appellees' preliminary objections to Appellants' claim that the procedure used to enact Act 57 failed to comply with Article III, Section 5.[7] However, rather than remanding the matter without further analysis, we proceed to the merits of Appellants' Article III, Section 5 claim for the very reason that it represents a constitutional issue of first impression for this Court, which sits as the ultimate interpreter of the Pennsylvania Constitution. *See Zemprelli v. Daniels*, 496 Pa. 247, 255, 436 A.2d 1165, 1169 (1981) (Supreme Court of Pennsylvania is ultimate interpreter of Pennsylvania Constitution).[8]

Article III, Section 5 provides:

No amendment to bills by one House shall be concurred in by the other, except by the vote of a majority of the members elected thereto, taken by yeas and nays, and the names of those voting for and against recorded upon the journal thereof; and reports of committees of conference shall be adopted in either House only by the vote of a majority of the members elected thereto, taken by yeas and

**7.** While we do not mean to imply that a lower court is precluded from sustaining preliminary objections whenever it is faced with an issue of first impression, the unique circumstances of this case demonstrate that the Commonwealth Court erred in doing so here.

**8.** We also note that all parties have briefed the issue on the merits.

nays, and the names of those voting recorded upon the journals.

Pa. Const. art. III, § 5.

Appellants argue that this provision places limits on the originating chamber once an amended bill has been returned to it. According to Appellants, Article III, Section 5 establishes the two exclusive procedures that are available to the originating chamber once different versions of a bill have been passed by the two chambers: (1) the originating chamber may concur in the amendments adopted by the other or (2) a conference committee may be called to develop a compromise version if the originating chamber chooses not to concur in the other's amendments. Appellants contend, then, that following the passage of differing versions of a bill by the two chambers, the originating chamber is constitutionally limited to concurring or non-concurring in the amendments made by the other chamber and may not further amend the bill on its own.

■ Applying this interpretation to the instant case, Appellants maintain that the Senate Rules Committee's June 11, 1996 amendments to S.B. 801, made after the bill had already been passed by the full Senate and House and in a manner beyond the scope of the amendments proposed and adopted by the House, violated our state constitution by circumventing the two exclusive procedures authorized by Article III, Section 5, i.e. concurrence or referral to a conference committee, for resolving differences between the two legislative chambers.

■ In rejecting Appellants' argument below, the Commonwealth Court concluded that the text of Article III, Section 5 does not support the interpretation advanced by Appellants. The court noted that the language of Article III, Section 5 does not in any way suggest that one chamber is prohibited from amending a bill that is returned to it with amendments by the other chamber. We agree with the Commonwealth Court that the text of Article III, Section 5 does not support Appellants' contention that "concurrence or referral to a conference committee are the exclusive actions that may be taken by the originating chamber once an amended bill is returned

to it." *PA AFL–CIO*, 691 A.2d at 1038. Rather, the text of Article III, Section 5 only requires that any concurrence by one chamber to amendments passed by the other chamber be accomplished by a constitutional majority vote and that the names of those members voting for or against the amendments be recorded in the journal. As even Appellants concede, a majority of the members of both the Senate and the House voted to approve the version of S.B. 801 which contained the amendments made by the Senate Rules Committee on June 11, 1996. The votes were taken by yeas and nays and the names of those voting for and against were recorded in the journals.

Appellants contend, however, that when the courts are faced with the task of interpreting a state constitutional provision, we must consider not only the text of the provision, but also the history of the provision to be interpreted, related case law from other states, and policy considerations. Under this umbrella, Appellants first argue that this Court should rely on *Board of Revenue v. Crow*, 141 Ala. 126, 37 So. 469 (1904), as persuasive authority. Appellants maintain that in *Crow*, the Supreme Court of Alabama interpreted a provision of its state constitution patterned after Pennsylvania's Article III, Section 5 and adopted Appellants' reasoning that a concurrence vote on the other chamber's amendments and the conference committee process are the exclusive methods for reconciling differences between two legislative chambers. In support of its argument, Appellants cite to the following excerpt from *Crow:*

> There are, as we have seen, only two ways by which one house can concur in amendments adopted by the other. One is by yea and nay vote of concurrence; the other, by adopting by yea and nay vote the 'report of a committee of conference' which recommends concurrence.

*Crow*, 37 So. at 475.

When read in isolation, we agree with Appellants that this language, while certainly not expressly prohibiting amendments such as the ones challenged here, could be read to support their proposed interpretation of Article III, Section 5. The issue before the Supreme Court of Alabama in *Crow*,

however, was not the same as the one presented to our Court in the instant matter. In *Crow*, the Alabama Supreme Court considered whether the House's adoption of a conference committee report, which recommended nonconcurrence in two of several amendments made by the Senate but did not recommend concurrence in the other Senate amendments, constituted concurrence in those Senate amendments not mentioned in the report. Unlike the instant matter, *Crow* simply did not concern the power of an originating chamber to further amend a bill that has been returned to it by the other chamber with amendments.

Thus, without support in the constitution's text for Appellants' position that Article III, Section 5 prohibits the originating chamber from further amending a bill that is returned to it with amendments by the other chamber, we cannot, as Appellants urge, adopt this reading of the constitution by relying on language from the case of a sister state which dealt with an issue different from the one before this Court.[9]

Appellants also contend that policy considerations favor their proposed reading of Article III, Section 5. They maintain that allowing a legislative committee to amend a bill in the

9. Appellants also cite to the more recent advisory opinion issued by the Alabama Supreme Court in *Opinion of the Justices No. 352*, 672 So.2d 1290 (1996), as further support for their argument that Article III, Section 5 precludes the legislature from amending legislation in the manner in which S.B. 801 was amended by the Senate Rules Committee. Again, the issue before the Supreme Court of Alabama in *Opinion of the Justices No. 352* was different from the one presented here. In *Opinion of the Justices No. 352*, the Alabama House of Representatives requested an opinion from the Supreme Court regarding the vote ratio required for either legislative body to adopt a conference committee report involving a proposed constitutional amendment. While the Alabama Supreme Court did cite to *Crow* in addressing this issue, the Court did not conclude that Section 64 of the Alabama Constitution, Article III, Section 5's counterpart, prohibits further amendments of a bill that is returned to the originating chamber with amendments by the other chamber. Rather, the Supreme Court of Alabama merely noted that under Section 64, one house must concur in the amendments adopted by the other house by a majority vote entered on the journal or by adopting the report of a conference committee by a yea or nay vote. The Court then addressed the issue at hand and held that under Section 64, a majority vote is required for each legislative body to adopt a conference committee report.

manner in which the Senate Rules Committee amended S.B. 801 undermines the purpose of Article III as a whole, which was drafted to place restraints on the legislative process and encourage an open, deliberative and accountable government. Under this lens, Appellants assert that the procedure used to enact S.B. 801 was the "legislative equivalent of sleight of hand" in which legislation passed by both chambers was surreptitiously re-written by a committee of a single chamber and "then presented to the full chamber's membership in a one-time, take-it-or-leave-it, no-amendments-allowed proposition." Appellants AFL–CIO, et al. Brief at 21.

Despite these assertions by Appellants, there can be no question that both the full Senate and House considered and then approved S.B. 801, as amended by the Senate Rules Committee on June 11, 1996, by a majority vote. As Appellees observe, the Senate and the House had the ability to non-concur in the Senate Rules Committee's amendments if a majority of the members disapproved of such amendments. Thus, we cannot agree with Appellants that the procedure used to enact S.B. 801 somehow subverted the intent of Article III so as to compel this Court to superimpose upon the Pennsylvania Constitution a procedural restriction not contained in its text.[10]

10. Appellants also contend that the conference committee, when reconciling differences between the two houses, has historically been restricted to addressing only the differences between the two chambers' versions of the same bill. Appellants argue that this limitation is logically applicable to *all* action taken after a bill's passage by both chambers and that any changes made at this point in the process must be "confined to either provisions that were actually in one or the other chambers' version of the legislation, or a compromise between them— not new material." Appellants AFL–CIO, et al. Brief at 46–47. Thus, Appellants maintain that the Senate Rules Committee acted unconstitutionally by making changes to S.B. 801 that were outside the scope of the amendments proposed and adopted by the House because no entity, whether a conference committee or a standing committee of a chamber, is constitutionally empowered to add *different material* to a bill after it has initially been passed by both houses. However, this Court has specifically recognized that legislation which emerges from a conference committee may materially differ from the bills which were sent to the conference committee for consideration. *Consumer Party v. Commonwealth*, 510 Pa. 158, 181, 507 A.2d 323, 334 (1986). Moreover, the Commonwealth Court, in direct conflict with Appellants' argument, has

Moreover, while Appellants complain that the respective internal Rules of Procedure of each chamber precluded further amendment following the Senate Rules Committee's amendments, we note that Article II, Section 11 of the Pennsylvania Constitution gives the legislature the sole authority to determine the rules of its proceedings subject only to clear pronouncements in the constitution as to procedure. Pa. Const. art. II, § 11; *see also Zemprelli v. Daniels*, 496 Pa. at 257, 436 A.2d at 1170 (Senate has exclusive power over its internal affairs and proceedings as long as the exercise of that power is not violative of Pennsylvania Constitution); *Sweeney v. Tucker*, 473 Pa. 493, 518, 375 A.2d 698, 710 (1977) (legislative body has power to determine its own rules of proceeding but such power does not include power to ignore constitutional restraints or violate fundamental rights) (citing *U.S. v. Ballin*, 144 U.S. 1, 5, 12 S.Ct. 507, 36 L.Ed. 321 (1892)). As previously discussed, Article III, Section 5 contains no pronouncement, clear or otherwise, restricting an originating chamber from further amending a bill returned to it by the other chamber with amendments. Thus, while we hold that our state constitution does not proscribe a legislative chamber from making such amendments, we note that the legislature, pursuant to Article II, Section 11, is free to impose such restrictions on itself through its internal rules of proceedings.[11]

In a footnote in their brief, Appellants AFL–CIO, et al. also assert that the Commonwealth Court erred in sustaining

recently held that Article III, Section 5 does not preclude a conference committee from going outside the parameters of disagreement between the two chambers of the legislature to reach consensus. *See League of Women Voters v. Commonwealth*, 692 A.2d 263, 271–71 (Pa. Commw.1997). Thus, we find Appellants' argument unpersuasive.

11. Of course, a committee's authority to amend a bill is constitutionally restricted by Article III, Section 1's mandate that "no bill shall be altered or amended, on its passage through either House, as to change its original purpose." Pa. Const. art. III, § 1. In the instant case, the Commonwealth Court determined that no violation of Article III, Section 1 occurred during the enactment of S.B. 801 since, throughout the amendment process, the purpose of S.B. 801 continued to relate to insurance coverage for injured workers in this Commonwealth. *Pennsylvania AFL–CIO v. Commonwealth*, 691 A.2d at 1036. As discussed below, Appellants have waived their claim relating to Article III, Section 1.

Appellees' preliminary objections to their claims that the enactment of S.B. 801 violated Article III, Sections 1–4. Such a cursory assertion, merely made in passing in a footnote, serves to waive these claims. *See Commonwealth v. Spotz,* 552 Pa. 499, 510 n. 5, 716 A.2d 580, 585 n. 5 (1998) (issue deemed waived when appellant fails to properly develop issue in brief).

In sum, we find that the Commonwealth Court properly overruled Appellees' preliminary objections with respect to the justiciability of Appellants' constitutional claims and that Appellants have waived their Article III, Sections 1–4 claims by failing to properly develop them in their brief. With respect to Appellants' Article III, Section 5 claim, we conclude that the Commonwealth Court erred in sustaining preliminary objections to this particular claim. However, after reviewing the merits of the underlying constitutional claim, we find that Article III, Section 5 does not, as Appellants contend, prohibit an originating chamber from further amending a bill returned to it by the other chamber with amendments. For these reasons, the order of the Commonwealth Court is affirmed.

Justice ZAPPALA files a concurring opinion in which Justice SAYLOR joins.

Justice CAPPY files a concurring opinion in which Justice SAYLOR joins.

ZAPPALA, Justice, concurring.

I join in the majority's holding that Appellants have waived their Article III, Sections 1–4 claims by failing to properly develop them in their brief. However, I am compelled to write separately because I cannot agree with the majority's determination that the Commonwealth Court erred in sustaining Appellees' preliminary objection to Appellants' Article III, Section 5 claim.

According to the majority, the Commonwealth Court erred in sustaining Appellees' preliminary objection because it was

not "clear and free from doubt"[1] whether Act 57 violated Article III, Section 5. Nevertheless, immediately thereafter the majority goes on to conclude that the interpretation advanced by Appellants finds no support in the text of Article III, Section 5. *See* Majority Op. at 920–21.

I fail to understand how this Court can summarily dismiss Appellants' constitutional interpretation of Article III, Section 5 as textually unsupportable, and at the same time fault the Commonwealth Court for reaching an identical conclusion in sustaining Appellees' preliminary objection. Although the majority asserts that the "unique circumstances of this case demonstrate that the Commonwealth Court erred ...", *id.* at 921 n. 7, the majority neither articulates the nature of these "unique circumstances" nor explains their significance.

Accordingly, I concur in the result.

Justice SAYLOR joins this Concurring Opinion.

CAPPY, Justice, concurring.

I join in the majority's holding that the Commonwealth Court correctly overruled appellees' preliminary objections with respect to the justiciability of appellants' constitutional claims, and that appellants waived their claims that Act 57 of 1996 violated Article III, Sections 1–4 of the Pennsylvania Constitution. I also agree with the majority's determination that appellants' Petition for Review fails to state a cause of action upon which relief can be granted under Article III, Section 5 of the Constitution. I do not agree, however, with the majority's conclusion that the Commonwealth Court erred in sustaining appellees' preliminary objections in the nature of a demurrer to that claim, and write separately to state what I believe to be the fundamental error in the majority's application of the standard to be used in deciding preliminary objections.

1. Preliminary objections, the end result of which would be dismissal of the action, may be properly sustained only if case is clear and free from doubt. *American Housing Trust, III v. Jones*, 548 Pa. 311, 696 A.2d 1181 (1997).

The test for ruling on preliminary objections in the nature of a demurrer is, as the majority points out, well-established. Preliminary objections may be sustained only in cases that are clear and free from doubt. *Bower v. Bower*, 531 Pa. 54, 57, 611 A.2d 181, 182 (1992). In determining whether preliminary objections were properly sustained, an appellate court must determine whether it is clear from doubt from all the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish a right to relief. *Firing v. Kephart*, 466 Pa. 560, 562–563, 353 A.2d 833, 834 (1976). Majority opinion at 920.

Appellants alleged in their Petition that during the legislative process, Senate Bill 801 was amended by the Senate Committee on Rules and Executive Nominations, reported to the full Senate, and returned to the full House of Representatives after it had been both passed unanimously by the full Senate and amended and passed unanimously by the full House. Appellants claimed in Count I that this process was unconstitutional because Article III, Section 5 of the Constitution prohibits the originating chamber of a bill from amending it after it has been amended by the other chamber, and requires instead, a straight "up-or-down vote" on the other chamber's amendments or an action by conference committee for reconciling differences between the two passed versions of the bill. The Commonwealth Court held to the contrary and granted appellees' preliminary objections to Count I, finding that Article III, Section 5 does not prohibit the originating chamber from amending its own bill once it has been amended by the other chamber and returned. *Pennsylvania AFL–CIO v. Commonwealth*, 691 A.2d 1023, 1039 (Pa.Cmwlth.1997). In its analysis, the court observed that no Pennsylvania court has interpreted Article III, Section 5, and recognized that the language in this particular constitutional provision is susceptible to more than one interpretation. *Id.* at 1038.

Taking note of these observations, the majority concludes that appellees did not meet their burden of demonstrating that the law interpreting Article III, Section 5 is clear and free from doubt, and that, therefore, the Commonwealth Court

erred in sustaining their preliminary objections. Majority Opinion at 920–21, 924. At the same time, however, the majority accepts the Commonwealth Court's interpretation of Article III, Section 5 and its ultimate conclusion that appellants' claim in Count I fails to state a violation of the Constitution. *Id.* at 924.

I believe that the majority misapplies the standard to be used in deciding preliminary objections. The standard is not, as the majority suggests, whether the law under consideration is clear and free from doubt; it is whether it is clear and free from doubt that the well-pleaded facts fail to establish that the pleader has a right to the legal relief he seeks. We clarified this very point in *Firing v. Kephart,* in which the plaintiff, a justice of the peace who was mandatorily retired, filed a complaint against Commonwealth officials, alleging that under Article V, Section 16(b) of the Pennsylvania Constitution, he was entitled to a continuation of his pay. Defendants filed preliminary objections in the nature of a demurrer, which the Commonwealth Court sustained. On appeal, plaintiff argued that inasmuch as the Constitution itself is not completely clear and free from doubt on the issue, the preliminary objections should not have been granted. Concluding that plaintiff's argument "misconceiv[ed] the function of preliminary objections in our jurisprudence", 353 A.2d at 834, this court affirmed the Commonwealth Court and stated:

> The test [on preliminary objections] is not whether the applicable law is clear and free from doubt, but whether it is clear and free from doubt from the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his right to relief. The role of the court in ruling on preliminary objections in the nature of a demurrer is to determine whether or not the facts pleaded are legally sufficient to permit the action to continue. This is so whether the legal determination to be made is relatively simple or relatively difficult.... There was no factual dispute in this case, only a dispute over the interpretation of the Constitution, and the ruling on appellees' preliminary objections was clearly the appropriate juncture for the

Commonwealth Court to interpret the pertinent provisions of the Pennsylvania Constitution and determine the merits of appellant's claim. Our task on appeal is to determine whether the court's interpretation was correct.

*Id.* at 835 (citation omitted).

Likewise, in this case, the fact that the proper interpretation of Article III, Section 5 is less than straightforward does not mean that appellees' preliminary objections should not have been granted. Appellees met their burden, showing that the facts alleged in the Petition do not state a cause of action under Article III, Section 5 for which relief may be granted. In my view, therefore, the Commonwealth Court was correct to grant the preliminary objections, and I would affirm the court's decision in this regard. Accordingly, as to appellants' Article III, Section 5 claim, I concur only in the result.

Justice SAYLOR joins this Concurring Opinion.