**[J-105A-D-2014]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, STEVENS, JJ.**

| | |
|---|---|
| SHERYL SEARS; RONALD J. GUINEY; FLORENCE SPANOS; BARBARA L. MILLER; RANDELL DEVLIN; KATHLEEN DEVLIN; SALLYE FISCUS; NICHOLAS BALANDIAT; LORETTA E. MAIERHOFER; MARY GALLAGHER; DANIEL CECCHETTI; MICHELE YAMSHON; VICKI L. MAZZAFERRO; MADELINE MARTUCCI; GARY CARPINELLO; KAREN CARPINELLO; DIANE HOLBERT; ARTHUR W. CUNNINGHAM, JR.; DANA CUNNINGHAM; DOLORES LOBIONDO; MICHAEL LOBIONDO; CAROL KUHNS; TAMMY BEVAN; ALICIA RAGER; TERESA LIBERATO; VALERIE BENKO; JOHN C. EGAN; TAMMY GROSS; BLANCHE HOOVER; JOSEPH D. STEINER; CYNTHIA BRAZEN; SUSAN ANTOSZEWSKI; ANGELA STETZ; BONNIE ZUZO; CAROL WEISS; LINDA SAUNDERS; LOUISE SCHNEIDER; LINDA GORSUCH; ALEX J. DERITIS, SR.; SHARON THIR; BECKY THIR; BARBARA SIMS; FRANK SIMS; CAROL L. DEVERS; DEBBIE A. KRAFT; DEBORAH A. MCGRADY; JEFF C. MILLER; DAVID LIPSTEIN; BONNIE LIPSTEIN; THOMAS R. HABERMAN; WILLIAM A. ROTH; DAVID DAWSON; VICTORIA D. HARTSEK; JEANINE RICHARDS; KELLY RICHARDS; WILLIAM AINSWORTH; WILLIAM BRIGGS; LORRAINE CAPALBO; CHRIS IAMS; RONALD KAPLAN; JOAN O'SHEA; KIMBERLY THOMAS; BIANCA WILLIS; SHAWN WILLIS; PAMELA R. ALWINE; BARBARA A. BEAM; BEVERLY A. CORCORAN; JAMES J. CORCORAN; KRISTYN L. CORCORAN; BILLYE | No. 22 MAP 2013<br><br>Appeal from the Order of the Commonwealth Court at No. 121 MD 2011 (consolidated with No. 157 MD 2011) dated 3/4/13 exited 3/5/13 |

GLENN; DAVID MCKEE; CHRISTINA A. :
MILLER; PARTICIA VARGULISH; DORA :
M. ALEXANDER; AND JODA L. SCHENA, :
ON BEHALF OF THEMSELVES AND ALL :
OTHERS SIMILARLY SITUATED :

            v. :

TOM WOLF AS GOVERNOR OF THE :
COMMONWEALTH OF PENNSYLVANIA; :
RANDY ALBRIGHT AS SECRETARY OF :
BUDGET OF THE COMMONWEALTH OF :
PENNSYLVANIA; HOUSE OF :
REPRESENTATIVES OF THE :
COMMONWEALTH OF PENNSYLVANIA; :
MIKE TURZAI AS SPEAKER OF THE :
HOUSE; SENATE OF THE :
COMMONWEALTH OF PENNSYLVANIA; :
JOSEPH B. SCARNATI, III, AS :
PRESIDENT PRO TEMPORE OF THE :
SENATE; AND DEPARTMENT OF :
TREASURY OF THE COMMONWEALTH :
OF PENNSYLVANIA :

APPEAL OF: MIKE TURZAI AS :
SPEAKER OF THE HOUSE; SENATE OF :
THE COMMONWEALTH OF :
PENNSYLVANIA; JOSEPH B. :
SCARNATI, III, AS PRESIDENT PRO :
TEMPORE OF THE SENATE :

SHERYL SEARS; RONALD J. GUINEY; : No. 23 MAP 2013
FLORENCE SPANOS; BARBARA L. :
MILLER; RANDELL DEVLIN; KATHLEEN : Appeal from the Order of the
DEVLIN; SALLYE FISCUS; NICHOLAS : Commonwealth Court at No. 121 MD
BALANDIAT; LORETTA E. : 2011 dated 3/4/13, exited 3/5/13
MAIERHOFER; MARY GALLAGHER; :
DANIEL CECCHETTI; MICHELE :
YAMSHON; VICKI L. MAZZAFERRO; :
MADELINE MARTUCCI; GARY :
CARPINELLO; KAREN CARPINELLO; :
DIANE HOLBERT; ARTHUR W. :
CUNNINGHAM, JR.; DANA :
CUNNINGHAM; DOLORES LOBIONDO; :
MICHAEL LOBIONDO; CAROL KUHNS; :
TAMMY BEVAN; ALICIA RAGER; :

TERESA LIBERATO; VALERIE BENKO; : 
JOHN C. EGAN; TAMMY GROSS; : 
BLANCHE HOOVER; JOSEPH D. : 
STEINER; CYNTHIA BRAZEN; SUSAN : 
ANTOSZEWSKI; ANGELA STETZ; : 
BONNIE ZUZO; CAROL WEISS; LINDA : 
SAUNDERS; LOUISE SCHNEIDER; : 
LINDA GORSUCH; ALEX J. DERITIS, : 
SR.; SHARON THIR; BECKY THIR; : 
BARBARA SIMS; FRANK SIMS; CAROL : 
L. DEVERS; DEBBIE A. KRAFT; : 
DEBORAH A. MCGRADY; JEFF C. : 
MILLER; DAVID LIPSTEIN; BONNIE : 
LIPSTEIN; THOMAS R. HABERMAN; : 
WILLIAM A. ROTH; DAVID DAWSON; : 
VICTORIA D. HARTSEK; JEANINE : 
RICHARDS; KELLY RICHARDS; : 
WILLIAM AINSWORTH; WILLIAM : 
BRIGGS; LORRAINE CAPALBO; CHRIS : 
IAMS; RONALD KAPLAN; JOAN O'SHEA; : 
KIMBERLY THOMAS; BIANCA WILLIS; : 
SHAWN WILLIS; PAMELA R. ALWINE; : 
BARBARA A. BEAM; BEVERLY A. : 
CORCORAN; JAMES J. CORCORAN; : 
KRISTYN L. CORCORAN; BILLYE : 
GLENN; DAVID MCKEE; CHRISTINA A. : 
MILLER; PARTICIA VARGULISH; DORA : 
M. ALEXANDER; AND JODA L. SCHENA, : 
ON BEHALF OF THEMSELVES AND ALL : 
OTHERS SIMILARLY SITUATED : 
 : 
 : 
 v. : 
 : 
 : 
TOM WOLF AS GOVERNOR OF THE : 
COMMONWEALTH OF PENNSYLVANIA; : 
RANDY ALBRIGHT AS SECRETARY OF : 
BUDGET OF THE COMMONWEALTH OF : 
PENNSYLVANIA; HOUSE OF : 
REPRESENTATIVES OF THE : 
COMMONWEALTH OF PENNSYLVANIA; : 
MIKE TURZAI AS SPEAKER OF THE : 
HOUSE; SENATE OF THE : 
COMMONWEALTH OF PENNSYLVANIA; : 
JOSEPH B. SCARNATI, III, AS : 
PRESIDENT PRO TEMPORE OF THE : 
SENATE; AND DEPARTMENT OF :

TREASURY OF THE COMMONWEALTH : 
OF PENNSYLVANIA :
 :
 :
APPEAL OF:  TOM WOLF AS :
GOVERNOR OF THE COMMONWEALTH :
OF PENNSYLVANIA; RANDY ALBRIGHT :
AS SECRETARY OF BUDGET OF THE :
COMMONWEALTH OF PENNSYLVANIA :
 :
 :
ERIC WEISBLATT, INDIVIDUALLY AND : No. 24 MAP 2013
ON BEHALF OF ALL OTHERS :
SIMILARLY SITUATED :
 : Appeal from the Order of the
 : Commonwealth Court at No. 157 MD
 v. : 2011 dated 3/4/13, exited 3/5/13
 :
HONORABLE TOM WOLF, AS :
GOVERNOR OF THE COMMONWEALTH :
OF PENNSYLVANIA; HONORABLE :
RANDY ALBRIGHT, AS SECRETARY OF :
BUDGET OF THE COMMONWEALTH OF :
PENNSYLVANIA; HONORABLE :
CHRISTOPHER CRAIG, AS ACTING :
TREASURER OF THE :
COMMONWEALTH OF PENNSYLVANIA; :
AND DEPARTMENT OF THE TREASURY :
OF THE COMMONWEALTH OF :
PENNSYLVANIA :
 :
APPEAL OF:  HONORABLE TOM WOLF, :
AS GOVERNOR OF THE :
COMMONWEALTH OF PENNSYLVANIA; :
HONORABLE RANDY ALBRIGHT, AS :
SECRETARY OF BUDGET OF THE :
COMMONWEALTH OF PENNSYLVANIA :
 :
 : No. 31 MAP 2013
 :
ERIC WEISBLATT, INDIVIDUALLY AND :
ON BEHALF OF ALL OTHERS : Appeal from the Order of the
SIMILARLY SITUATED, : Commonwealth Court at No. 157 MD
 : 2011 dated 3/4/13, exited 3/5/13
 :
 Cross Appellant :
 :
 :
 v. :
 :
 :
HONORABLE TOM WOLF, AS :

GOVERNOR OF THE COMMONWEALTH : 
OF PENNSYLVANIA; HONORABLE : 
RANDY ALBRIGHT, AS SECRETARY OF : 
BUDGET OF THE COMMONWEALTH OF : 
PENNSYLVANIA; HONORABLE : 
CHRISTOPHER CRAIG, AS ACTING : 
TREASURER OF THE : 
COMMONWEALTH OF PENNSYLVANIA; : 
AND DEPARTMENT OF THE TREASURY : 
OF THE COMMONWEALTH OF : 
PENNSYLVANIA, : ARGUED: November 19, 2014

Cross Appellees

## OPINION

**MR. CHIEF JUSTICE SAYLOR**                    **DECIDED: June 19, 2015**

These consolidated direct appeals concern Appellees' efforts to resurrect a defunct state-run health insurance program.

By way of essential background, this case involves challenges to amendments to the Fiscal Code,[1] which, *inter alia*, defines the powers and duties of the Department of Revenue and the Treasury Department relative to the disbursement or disposition of Commonwealth funds. *See* 72 P.S. §2. In conjunction with annual appropriations processes, the General Assembly has employed omnibus amendments to the Fiscal Code, for many years, as the enabling mechanism for financing state government operations and various programs. *See, e.g.*, Act of July 6, 2010, P.L. 279, No. 46 (encaptioned "Fiscal Code - Omnibus Amendments" and providing, *inter alia*, for the implementation of the operating budget of the Commonwealth for the fiscal year 2010-2011).

---

[1] Act of April 9, 1929, P.L. 343, No. 176 (as amended 72 P.S. §§1-1804).

Appellees were recipients of state-subsidized, low-cost health insurance via the adultBasic program, which was previously administered by the Department of Insurance and made available to certain qualifying adults in Pennsylvania. The program historically received the bulk of its funding from the proceeds of a 1998 multi-state master settlement agreement between forty-seven states – including the Commonwealth – and several major tobacco product manufacturers in the United States.[2]

The allocation and distribution of funds received annually by the Commonwealth under this accord was initially administered outside of the Fiscal Code, via the Tobacco Settlement Act.[3] Per this enactment, such monies were deposited into a special fund denominated the Tobacco Settlement Fund (the "Fund"), *see* 35 P.S. §5701.303(a) (repealed). The TSA also provided for appropriations calculated annually using defined formulas. *See* 35 P.S. §5701.306(b) (repealed). As relevant here, thirty percent of the funds were allocated, collectively, to adultBasic and another health-related program which provides medical assistance benefits for workers with disabilities, known as "MAWD." *See* 35 P.S. §5701.306(b)(1)(vi) (repealed).

Of particular significance to the present appeals, the TSA's adultBasic provisions also specified:

> Subsidization of the benefit package [of adultBasic] is *contingent upon the amount of the appropriations to the program* and limited to eligible adults . . .. *Nothing under this section shall constitute an entitlement derived from the*

---

[2] *See generally* Act of June 22, 2000, P.L. 394, No. 54 (as amended 35 P.S. §§5671 – 5675) (the "Tobacco Settlement Agreement Act").

[3] Act of June 26, 2001, P.L. 755, No. 77 (as amended 35 P.S. §§5701.101 – 5701.5103) (the "TSA").

> *Commonwealth or a claim on any funds of the Commonwealth.*

35 P.S. §5701.1303(c) (emphasis added).[4]

In the years after the passage of the TSA, in conjunction with the annual budget process and through the vehicle of the omnibus amendments to the Fiscal Code, the Legislature directed a series of one-time transfers of tobacco settlement monies from the Fund.[5] Such redirection was initially undertaken primarily in furtherance of health-related purposes, albeit ones outside the purview of the TSA. *See supra* note 5.[6] As relevant to the present litigation, for purposes of fiscal years 2010-2011 and 2011-2012, the General Assembly again used modifications to the Fiscal Code to override the TSA's requirements for tobacco settlement monies. The amendments in question were

---

[4] MAWD apparently received priority over adultBasic relative to tobacco settlement funds, as no particular formula was provided in the TSA for division between these two programs, but MAWD benefits are in the nature of an entitlement. *See* 35 P.S. §5701.1503(c) (providing, upon the satisfaction of certain conditions specified in MAWD, that the department or its designee "*shall* provide to the worker medical assistance benefits" (emphasis added)).

[5] *See* Act of June 29, 2002, P.L. 614, No. 91, §18 (adding Section 1721-A to the Fiscal Code, 72 P.S. §1721-A (expired)); Act of July 7, 2005, P.L. 174, No. 41, §2 (reenacting amended Section 1721-A, 72 P.S. §1721-A (expired)); Act of July 5, 2006, P.L. 296, No. 66, §2 (adding Section 1715-C of the Fiscal Code, 72 P.S. §1715-C); Act of July 17, 2007, P.L. 141, No. 42, §4 (adding Section 1715-G of the Fiscal Code, 72 P.S. §1715-G); Act of July 4, 2008, P.L. 629, No. 53, §8 (adding Section 1715-I of the Fiscal Code, 72 P.S. §1715-I); Act of October 9, 2009, P.L. 537, No. 50, §5 (adding Section 1715-K of the Fiscal Code, 72 P.S. §1715-K).

[6] For a period of time beginning in 2005, some of the dissipation of funding to adultBasic was offset by subsidization from Pennsylvania's Blue Cross and Blue Shield Plans as part of their non-profit missions pursuant to the Community Health Reinvestment Agreement. *See generally* Act of July 5, 2006, P.L. 296, No. 66 (containing, *inter alia*, a superseded version of Section 1715-C(b) of the Fiscal Code; *accord* H.R. 500, 195th Gen. Assemb., Reg. Sess. (Pa. 2011). Such agreement, however, expired in 2010. *See id.*

contained in the Act of July 6, 2010, P.L. 279, No. 46 ("Act 46") (adding Sections 1715-M of the Fiscal Code, 72 P.S. §1715-M), and the Act of June 30, 2011, P.L. 159, No. 26 ("Act 26") (adding Section 1715-C of the Fiscal Code, 72 P.S. §1715-C).  One effect of the amendments was to divert tobacco settlement funds more generally to other fiscal priorities of the Commonwealth.  For example, Act 46 required a transfer of $250,000,000 to the Commonwealth's General Fund.  *See* 72 P.S. §1715-M(b)(5).[7]  At least partially on account of the loss of essential funding, adultBasic ceased operations in February 2011.  *See* N.T., Apr. 12, 2011, at Exh. P-5 (reflecting a termination notice provided to a previous adultBasic subscriber).[8]

In March 2011, Appellees Cheryl Sears and seventy-four other former recipients of adultBasic (the "Sears Appellees") filed an original-jurisdiction petition for review in the Commonwealth Court, styled as a class action.  The petition and amendments designated as respondents:  the Governor of Pennsylvania and the Secretary of Budget (collectively, the "Executive Appellants"); the Senate, the House of Representatives,

---

[7] *See generally* 72 P.S. §302 (defining the "General Fund" as "[a]ll monies received by the Treasury Department from the Department of Revenue, or from any other source, which are not by this act required to be credited to any other fund").

Notably, the Legislature has continued, in subsequent years, to apply similar practices of redirecting tobacco settlement monies away from the Tobacco Settlement Fund through the vehicle of omnibus amendments to the Fiscal Code.  *See* Act of July 2, 2012, P.L. 823, No. 87, §14 (adding Section 1715-G of the Fiscal Code, 72 P.S. §1715-G), Act of July 18, 2013, P.L. 574, No. 71, §§14-15 (adding Sections 1711-A.1 through 1713-A.1 of the Fiscal Code and repealing Sections 303, 306, and 307 of the TSA, 35 P.S. §§5701.303, 5701.306 – 5701.307).

[8] The Commonwealth Court has found that the adultBasic program also terminated because MAWD had been consuming an increasing portion of the tobacco settlement funds dedicated to it and adultBasic collectively, and on account of the expiration of the subsidization stream under the Community Health Reinvestment Agreement.  *See* *Sears v. Corbett*, 121 & 157 M.D. 2011, *slip op.* at 13-14 (Pa. Cmwlth. Apr. 20, 2011) (single judge memorandum).

and various legislative leaders (the "Legislative Appellants"), and the Department of Treasury. As amended, the petition contended, *inter alia*, that the redirection of tobacco settlement monies under Acts 46 and 26 violated the TSA's requirements for appropriation and allocation of tobacco settlement funds. *See* 35 P.S. §5701.306. The petition also asserted that these enactments offended various provisions of the Pennsylvania Constitution governing legislative processes, including the general requirement that no bill shall be passed containing more than a single subject. *See* PA. CONST. art. III, §3. Appellees sought declaratory, mandamus, and injunctive relief retroactively reestablishing the adultBasic program and reimbursing the program over two hundred million dollars.

In April 2011, Appellee Eric Weisblatt commenced a separate original-jurisdiction proceeding in the Commonwealth Court, also styled as a class action, proffering materially similar allegations and claims for relief, in the relevant respects. Appellee Weisblatt, however, named only executive-branch officials and agencies as defendants.

Appellees in both proceedings moved for a preliminary injunction to preclude the Treasury from disbursing the tobacco settlement monies which were due to be received that month as appropriated per Act 46. Relief was denied by the court, however, upon its finding that the harm asserted by Appellees was neither immediate nor irreparable.[9] *See Sears v. Corbett*, Nos. 121 & 157 M.D. 2011, *slip op.* at 11 (Pa. Cmwlth. Apr. 20, 2011) (single-judge memorandum). The court reasoned that the harm had already occurred, given the termination of the adultBasic program several months earlier, and

---

[9] *See generally Warehime v. Warehime*, 580 Pa. 201, 209-10, 860 A.2d 41, 46-47 (2004) (discussing the requirements for preliminary injunctive relief, including the requirements that relief is necessary to prevent immediate and irreparable harm that cannot be compensated by damages).

moreover, the requested relief would not restore Appellees' insurance or resurrect adultBasic. *See Sears*, Nos. 121 & 157 M.D. 2011, *slip op.* at 11-12.[10] Finally, the court determined that greater harm would inure to the Commonwealth were relief to be afforded, since the General Assembly had redirected monies, per Act 46, in order to balance the budget as required by the Pennsylvania Constitution. *See id.* at 12 & n.12 (citing PA. CONST. art. VIII, §12). According to the court, judicial interference with this regime would adversely affect the operation of government, services, and programs. *See id.* at 13.

Subsequently, Appellants filed preliminary objections. In particular, they relied on the TSA's prescription that "[n]othing under this section [pertaining to adultBasic benefits] shall constitute an entitlement derived from the Commonwealth or a claim on any funds of the Commonwealth." 35 P.S. §5701.1303(c). Furthermore, several of the appellants invoked sovereign immunity to the extent that Appellees sought to compel the restoration of adultBasic in the absence of legislative appropriations or to hold them responsible for any effects of its termination.

On June 27, 2012, the Commonwealth Court issued a divided, *en banc* opinion in the *Sears* case, which sustained the preliminary objections pertaining to several of the Sears Appellees' claims, while deeming others meritorious and/or subject to further consideration. *See Sears v. Corbett*, 49 A.3d 463 (Pa. Cmwlth. 2012). In terms of sovereign immunity, the majority distinguished between those suits seeking to compel affirmative action on the part of state officials or to recover money or property, and those asking to restrain state officials from performing affirmative acts. *See id.* at 471 (citing *Phila. Life Ins. Co. v. Commonwealth*, 410 Pa. 571, 576, 190 A.2d 111, 114

---

[10] The court also observed that the executive branch had advised subscribers of other available healthcare insurance alternatives. *See id.* at 10.

(1963)). Only the latter, the majority explained, was excepted from the application of sovereign immunity. *See id.*

The Commonwealth Court majority next applied this distinction to the Sears Appellees' request for an order mandating that all future tobacco settlement monies be deposited in accordance with the TSA, the Fund be reimbursed these monies, and the adultBasic program be reinstated retroactively. Given that the Legislature already had provided for redirection of the relevant funds, the majority reasoned, the Legislative Appellants would be required to take affirmative action to effectuate a remedy. *See id.* at 472-73. Accordingly, the majority concluded that the doctrine of sovereign immunity barred relief as against the legislative respondents and sustained the preliminary objections in this regard. *See id.* at 473.[11]

The majority, however, regarded the relief requested relative to the Executive Appellants as in the nature of a restraint from carrying out the dictates of the Acts 46 and 26 amendments. *See id.* ("Should this Court ultimately conclude that the aforementioned Acts were unconstitutional, we could certainly direct Respondents Corbett and Zogby to refrain from enforcing this legislation."). Given the permissibility of a prohibitory injunction impacting the sovereign, the majority overruled the Executive Appellants' preliminary objections in such regards.

In response to the argument that the Sears Appellees lacked any entitlement to adultBasic benefits, the majority credited their position that the non-entitlement language in Section 1303 of the TSA had a limited and directed purpose, in that it "was meant [only] to address the expiration of the annual [tobacco settlement fund] payments

---

[11] The Commonwealth Court majority also found that the Speech and Debate Clause found in Article II, Section 15 of the Pennsylvania Constitution foreclosed any type of judicial order directing the General Assembly to enact new legislation. *See Sears*, 49 A.3d at 481-82.

in 2025 or a substantial decrease in [such payments]." *Id.* at 474. Viewed as such, the majority reasoned, the TSA did not preclude the Sears Appellees from challenging the diversion of tobacco settlement monies from adultBasic. *See id.* Conceptually, the majority also perceived a material difference between claiming entitlement to monies and challenging redirection of such funds away from a particular program. *See id.* ("[The Sears Appelllees] are not alleging an entitlement, nor are they asserting a claim to Commonwealth Funds. Rather, [they] are challenging the redirection of [tobacco settlement] monies away from the Fund.").

The majority proceeded to determine that Acts 46 and 26 were inconsistent with the Pennsylvania Constitution's single-subject provision. *See* PA. CONST. art. III, §3. Initially, the majority mentioned the salient purpose of Article III, Section 3 -- which is to prevent what were considered by early framers to be pernicious practices of the past -- as encapsulated within the following passage from this Court's decision in *City of Philadelphia v. Commonwealth*, 575 Pa. 542, 838 A.2d 566 (2003):

> [O]mnibus bills . . . permitted the passage of hidden legislation and allowed "logrolling" -- that is, "embracing in one bill several distinct matters, none of which could singly obtain the assent of the legislature, and procuring its passage by combining the minorities who favored the individual matters to form a majority that would adopt them all." As a corollary, the single-subject requirement prevents the attachment of riders which could not become law on their own to popular bills that are certain to pass. Also, a bill addressing a single topic is more likely to obtain a considered review than one addressing many subjects.

*Id.* at 574-75, 838 A.2d at 586 (citations omitted). *See generally id.* at 573, 838 A.2d at 585 ("Article III's general purpose is 'to place restraints on the legislative process and encourage an open, deliberative and accountable government.'" (quoting *Pa. AFL-CIO ex rel. George v. Commonwealth*, 563 Pa. 108, 119, 757 A.2d 917, 923 (2000))).

Further, the majority recognized that, in giving effect to the above aims while also extending appropriate deference to the legislative branch, this Court had devised a "practical germaneness test" as the litmus for constitutional compliance with the single-subject requirement. *Sears*, 49 A.3d at 475 (citing *City of Phila.*, 575 Pa. at 579, 838 A.2d at 589 (reflecting that Article III, Section 3 requires that legislation possess some "single unifying subject to which all of the provisions of the act are germane")).

Applying this test, the Commonwealth Court majority found that both Acts 46 and 26 encompassed multiple diverse subjects, including ones unrelated to the Commonwealth's operating budget. For example, the majority explained that Act 46 contains various sections pertaining to "building/construction permits, heritage areas and the establishment of a heritage area program within the Department of Conservation and Natural Resources, victims of crime and the establishment of a Special Juvenile Compensation Fund, and semi-annual reports of the Pennsylvania Emergency Management Agency." *Sears*, 49 A.3d at 478.[12]

Judge Simpson authored the dissent, which Judge McGinley joined. Relying on Section 1303(c) of the TSA, the dissent found that "the TSA established the adultBasic program, but it placed express limits on privileges of eligible adults." *Sears*, 49 A.3d at 487 (Simpson, J., dissenting). In particular, the dissent stressed the statutory non-entitlement language. *See id.* (quoting 35 P.S. §5701.1303(c)).

Judge Simpson acknowledged the Sears Appellees' suggestion that they were not alleging an entitlement or making a claim to Commonwealth funds, as well as their argument that the non-entitlement language was merely intended to address a financial

---

[12] The majority opinion also disposed of various other claims advanced by Appellants. We have chosen to focus on the single-subject aspect to streamline the discussion, particularly since our disposition, below, centers on the threshold question of the impact of the TSA's prescription that the statute simply does not form the basis for a claim.

shortfall expected around 2025, when the tobacco settlement payments were expected to subside. The dissent replied, however:

> By whatever name, [the Sears Appellees] seek return of funds from the Commonwealth's General Fund back to an account where it will be available for the adultBasic program. The plain language of Section 1303 does not enable them to do so. Nor does the plain language even hint that non-entitlement begins in 2025. To the extent that the majority reaches a different conclusion, I respectfully part company.

*Id.* at 488.

Several weeks after the Commonwealth Court's issuance of its opinion in *Sears*, the court issued a divided decision in the companion case of *Weisblatt*. *See Weisblatt v. Corbett*, 53 A.3d 91 (Pa. Cmwlth. 2012) (*en banc*). Countervailing expressions were presented incorporating the reasoning and conclusions set forth in the *Sears* majority and dissenting opinions. *See id.* at 92-93.

Subsequently, the parties filed cross-motions for summary relief, and the *Sears* and *Weisblatt* cases were consolidated. In March 2013, the Commonwealth Court, by way of an unpublished single-judge opinion, denied class certification but awarded partial summary relief in Appellees' favor. *See Sears v. Corbett*, 121 & 157 M.D. 2011, *slip op.* (Pa. Cmwlth. Mar. 4, 2013).[13] As to Appellees' requests for declaratory and injunctive relief, the court considered itself bound by the previous decision on preliminary objections discerning violations of Article III, Section 3 of the Pennsylvania Constitution and other prescriptions of such charter. In this regard, the court referenced the "law of the case" doctrine. *See Sears*, 121 & 157 M.D. 2011, *slip op.* at 23 ("Law of the case means that whatever is once irrevocably established as the controlling legal

---

[13] The class certification aspect is not directly relevant to the present appeals and will not be discussed further.

rule of the decision between the same parties in the same case continues to be the law of the case." (quoting *In re Pa. Turnpike Comm'n*, 715 A.2d 1219, 1223 n.10 (Pa. Cmwlth. 1998))). Based upon this principle as applied to the previous decision on preliminary objections, the court declared Acts 46 and 26 to be unconstitutional and permanently enjoined the Executive Appellants and the Treasury from enforcing the provisions of these enactments on a prospective basis. *See id.*

The Commonwealth Court also found the prior decision controlling relative to Appellees' request for mandamus relief to compensate for the lapse of funding in previous years. In this regard, the court highlighted that such relief would require legislative action, which, by virtue of sovereign immunity, was beyond the court's authority to direct. *See id.* at 28. Thus, the court denied the salient requests for mandamus relief.

The Commonwealth Court further directed that the Executive Appellants and Treasury were to appropriate "30% of the Fund to 'health investment insurance pursuant to Chapter 13 and for the purchase of Medicaid benefits for workers with disabilities pursuant to Chapter 15,' i.e., the MAWD and adultBasic Program, as required by Section 306(b)(1)(vi) of the TSA." *Sears*, 121 & 157 M.D. 2011, *slip op.* at 28. The court issued this directive because the Executive Appellants had submitted an uncontradicted affidavit indicating that the entire thirty percent of the TSA funds were to be allocated to MAWD for the 2013-2014 fiscal year. The court ruled that such allocation was impermissible, however, given that the TSA required a division of funds between the two programs. *See id.* at 28-29.

The Legislative and Executive Appellants lodged appeals, and Appellee Weisblatt filed a cross-appeal to challenge the denial of retrospective relief. Per Rule of Appellate Procedure 1736(b), an automatic supersedeas prevented immediate

operation of the Commonwealth Court's order. *See* Pa.R.A.P. 1736(b). Appellees asked this Court to vacate the supersedeas, but their request was denied.

During the pendency of the appeals, additional omnibus amendments to the Fiscal Code were enacted into law, which, *inter alia*, effectuated a repeal of the allocation formula provided in the TSA, replacing it with a funding stream dedicated solely to MAWD. *See* Act of July 18, 2013, P.L. 574, No. 71, §§14, 20(5) ("Act 71") (adding Sections 1711-A.1 through 1713-A.1 of the Fiscal Code, 72 P.S. §§1711-A.1 - 1713-A.1, and repealing Sections 303, 306, and 307 of the TSA, 35 P.S. §§5701.303, 5701.306 – 5701.307). The result is to formally displace adultBasic funding within the terms of the TSA itself. *See id.* In light of these amendments, Appellees renewed their request for relief from the supersedeas, which was again denied.

Presently, Appellants' lead argument remains that specific admonitions by the Legislature within the terms of the TSA itself -- namely, that funding to adultBasic was conditional and nothing in the TSA provisions establishing the program was intended to establish an entitlement or support a claim against the Commonwealth -- foreclose Appellees' challenges in their entirety.[14] Appellants dismiss the Commonwealth Court majority's explanation for the non-entitlement language, in which the majority posited that the provision was intended to address the program's sunset upon the full

---

[14] *See, e.g.*, Brief for the Legislative Appellants at 28 ("The Tobacco Settlement Act is crystal clear: the continuation of benefits under the adultBasic program is statutorily conditioned upon subsequent decisions to be made by the General Assembly and the Governor as to whether and how much to appropriate to that program."); *id.* at 34 ("The only interpretation that gives full meaning to this statutory non-entitlement language is one that construes the language just as it reads: the General Assembly did not, by establishing adultBasic to provide a non-mandated and gratuitous benefit to eligible adults, create in [Appellees] any claim to adultBasic benefits or any claim to Commonwealth funds."); Brief for the Executive Appellants at 55 ("Section 1303(c) specifically provides that no individual in the adultBasic program has an entitlement to benefits or permits any claim to a fund of the Commonwealth.").

consummation of the tobacco settlement arrangement, as being entirely extra-statutory. *See* Brief for the Legislative Appellants at 33 ("As Judge Simpson correctly observed, the statutory text does not even 'hint that non-entitlement begins in 2025.'" (quoting *Sears*, 49 A.3d at 488 (Simpson, J., dissenting))).  Rather, it is Appellants' position that the plain language of the TSA conveys the General Assembly's anticipation of, and accounting for, the possibility for future shifts among fiscal priorities.  Furthermore, like Judge Simpson, Appellants regard the majority's distinction between challenging a redirection of funds and laying a claim to the same funds as illusory.

Even if this were not the case, Appellants observe, Appellees' action cannot possibly result either in the reestablishment of the adultBasic program or the reinstatement of the funding stream for the program contained in the original 2001 enactment, since adultBasic ceased operations four years ago.  Moreover, they stress, the TSA's original funding formula has since been repealed by the General Assembly, and any sought-after relief in the form of reimbursement is barred by the doctrines of Sovereign Immunity and Speech or Debate Immunity.  *Accord* Brief for the Legislative Appellants at 14 (referencing the passage of Act 71 in 2013, after which "there is no longer *any* statutory mechanism for funding of adultBasic"); Brief for the Executive Appellants at 47 ("Enjoining the enforcement of the adultBasic provisions today has no practical meaning or effect, as there is nothing left to enforce.").  For the above reasons, the Legislative Appellants couch Appellees' action as both "meritless and pointless." Brief for the Legislative Appellants at 8.

The Legislative Appellants also urge this Court to resolve the case on such basis as to avoid "plung[ing] into the thorny bramble of constitutional procedure otherwise presented here."  Brief for the Legislative Appellants at 25; *accord id.* at 35 ("Because [Appellees] have no entitlement to adultBasic benefits or Commonwealth funds, the

Court should exercise judicial restraint and decline to opine on the academic constitutional questions regarding Acts 46 and 26."). In this regard, the Legislative Appellants invoke the maxim that difficult constitutional questions should be avoided if another avenue for disposition is present. *See, e.g.*, *MCI WorldCom, Inc v. PUC*, 577 Pa. 294, 311, 844 A.2d 1239, 1249 (2004) ("The 'canon of constitutional avoidance' provides that when a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." (citations omitted)). Additionally, they highlight the Commonwealth Court's determinations applying the doctrine of sovereign immunity and the Speech and Debate Clause. According to the Legislative Appellants, havoc would result were this Court to disturb the practice of employing omnibus-style amendments to the Fiscal Code to implement the Commonwealth's budget. They relate that "[t]his is a matter of deep concern not only to the General Assembly, but also to the People of the Commonwealth, who rely on a government funded by these laws amending the Fiscal Code each and every day." Brief for the Legislative Appellants at 27.

Along these lines, the Legislative Appellants explain that Acts 46 and 26 did much more than simply allocate tobacco settlement monies, in that such enactments implemented the Commonwealth budgets for the applicable fiscal years and provided for a host of other fiscal matters.[15] Given such breadth of applicability, the Legislative

---

[15] As examples, the Legislative Appellants reference: funding for public health and welfare, including autism services, lupus programs, breast cancer screening, arthritis outreach, children and youth programs, and county human services, *see* 72 P.S. §§1725-L, 1729-B, 1729-L; funding for volunteer fire companies and ambulance services, and for the Pennsylvania State Police, *see* 72 P.S. §§1733-B, 1733-L, 1799-E; requisitions for funding of the legislative, executive, and judicial branches, 72 P.S. §1501; grants provided by the Juvenile Court Judges Commission, *see* 72 P.S. §1712-E; funding for public school education, higher education, and education for blind and (continued…)

Appellants reiterate that "budgetary chaos could erupt throughout the Commonwealth," should Appellees' position be sustained.  *See id.* at 39.  According to the Legislative Appellants:

> Such potential unintended consequences only reinforce the public policies that underlie the Legislative Immunity and Sovereign Immunity doctrines, all of which require that the Court exercise restraint from interfering with the legislative, budgetary, and policy decisions and activities of the coordinate Branches of government.
>
> The overwhelming gravity of these weighty constitutional issues, along with the potential for disastrous, unintended consequences, should give this Court great pause before delving into the domains of the Legislative and Executive branches that have been entrusted to them by the People, through the Constitution.

Brief for the Legislative Appellants at 39; *cf.* Brief for the Executive Appellants at 31 ("Taking the omnibus bill and dividing it into a vast sea of smaller bills, all of which would need to be passed at the same time, would likely increase the chance of

---

(…continued)
deaf students, *see* 72 P.S. §1722-B, 1722-L, 1738-L, 1738-E; funding for services for the blind to be administered by the Department of Labor and Industry, *see* 72 P.S. §1727-L; educational tax credits for small businesses, *see* 72 P.S. §§1601-H, 1602-H (repealed); economic development, including the Neighborhood Improvement Zone Fund, Keystone Opportunity Zone, Keystone Special Development Zone, and Gaming Economic Development and Tourism Fund, *see* 72 P.S. §§1604-B (repealed), 1601-F (repealed), 1604-F (repealed), 1605-B (repealed), 1719.1-E; audits of disbursed funding, *see* 72 P.S. §§1502, 1701-O; the investment of Commonwealth monies, *see* 72 P.S. §§301.1, 505; issuance of bonds to refinance debt, *see* 72 P.S. §1601-G; and creation of restricted receipt accounts for the purpose of administering federal grants, impacting justice assistance, aid to volunteer fire companies, land and water conservation, education of the disabled, library grants, homeless adult assistance, assistance to severely disabled persons, transportation for the elderly and disabled, disaster relief, and historic preservation, *see* 72 P.S. §§1716-C, 1719-M.  *See* Brief for the Legislative Appellants at 37-38 & n.23.

confusion and obfuscation by scattering the amendments across multiple pieces of legislation."). In a similar vein, the Executive Appellants also raise justiciability concerns under the political-question doctrine. *See* Brief for the Executive Appellants at 54 ("[T]he appropriation of Commonwealth funds is vested in the legislature and any challenges to its decisions in that regard are non-justiciable political questions based on the separation of powers." (footnote and citations omitted)).[16]

Should this Court reach the merits, it is Appellants' position that Acts 46 and 26 each had a unifying subject, namely, implementation of the Commonwealth's operating budget. According to the Legislative Appellants, "[b]ecause the Commonwealth's budget touches all corners of the Commonwealth, impacting virtually every aspect of governmental, commercial, and day-to-day life in Pennsylvania, it is of course necessary for the Fiscal Code enactments to address a multitude of different programs, initiatives, objectives, special funds, agencies, and other matters." Brief for the Legislative Appellants at 45.

Appellees, on the other hand, contend that the "entitlement" language of Section 1303(a) has no bearing on their standing to pursue judicial redress. In this respect, Appellees emphasize that the primary source of funds for adultBasic was tobacco settlement monies, which Appellees appear to distinguish from "funds of the Commonwealth," as to which the TSA indicated they have no claim. *See* Brief for

---

[16] The Legislative Appellants also take issue with Judge Pellegrini's application of the law-of-the-case doctrine, noting, *inter alia*, that the principle does not operate as an inflexible command relative to decisions made at different stages of a proceeding. *See* Brief for the Legislative Appellants at 30 (citing *Riccio v. Am. Rep. Ins. Co.*, 550 Pa. 254, 261, 705 A.2d 422, 425 (1997)). In any event, presumably Judge Pellegrini continued to support the substantive merits of the decision on preliminary objections, since he was a member of the *en banc* panel and joined the majority decision. *See* *Sears*, 49 A.3d at 468.

Appellees at 35 ("[T]he subsidy is to be obtained from Tobacco Settlement proceeds, not 'from the Commonwealth.'").

Appellees also maintain the distinction, adopted by the Commonwealth Court majority, between challenging a redirection of monies and laying a claim to the same funds. *See, e.g., id.* at 37-38 ("[A]ppellees are not claiming that the benefits provided by the adultBasic program were an unconditional entitlement from the Commonwealth. Rather, they are challenging *how* the General Assembly took away funding for a program that the Tobacco Act mandated was to be funded by Tobacco Settlement money."). On this subject, Appellees also fault Appellants for "conflat[ing] specific laws relating to entitlement programs with the more fundamental question of legal standing." Brief for Appellees at 36-37; *see also id.* at 37 ("For the [Appellants], the words of Section 5701.1303(c), to the effect that adultBasic is not an entitlement program, have a talismanic power that immunizes the General Assembly's actions relating to the administration of the Tobacco Settlement Fund from judicial oversight.").

In terms of standing, Appellees observe that, in *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975), the Court explained that, while there have been iterations of the litmus suggesting the requirement of a legal right, "this test proved unsatisfactory, and has now been generally discarded." *See id.* at 200, 346 A.2d at 285 (footnotes and citations omitted). Under the prevailing standard, Appellees explain, a party is aggrieved when his interest is direct, substantial and immediate, with the Court defining these terms as follows:

> A party has a substantial interest in the outcome of litigation if his interest exceeds that of all citizens in procuring obedience to the law. The interest is direct if there is a causal connection between the asserted violation and the harm complained of; it is immediate if that causal connection is not remote or speculative.

*City of Phila.*, 575 Pa. at 560, 838 A.2d at 577 (footnotes and citations omitted). Here, Appellees contend that their interest is substantial because their health insurance was lost; the interest is direct since, in absence of the challenged Fiscal Code amendments, they believe the adultBasic program would have retained funding; and it is immediate in light of the direct pecuniary harm they suffered.

Appellees' central position is that Acts 46 and 26 reflect "the precise type of legislation that Article III, §3 of the Pennsylvania Constitution was intended to prevent -- omnibus bills containing a mixture of distinct and independent subjects which will not be subject to the enhanced scrutiny a single-topic bill would undergo." Brief for Appellees at 20. Appellees' contention, on this point, is that Acts 46 and 26 "deal with virtually every aspect of life in Pennsylvania, certainly encompassing all levels of state and local government and all who interact with or are governed by them." *Id.* at 24; *cf. supra* note 15. Furthermore, Appellees highlight the understanding, on the part of this Court, that "it would be a serious dereliction on our part to deliberately ignore a clear constitutional violation." *Consumer Party of Pa. v. Commonwealth*, 510 Pa. 158, 178, 507 A.2d 323, 333 (1986).

Appellee Weisblatt, in his capacity as the cross-appellant, has filed a separate set of briefs arguing in favor of retrospective monetary relief.[17]

---

[17] Appellees also challenge the Legislative Appellants' standing to appeal, since the Commonwealth Court held that no relief could be awarded against them. We decline, however, to credit this position. The Sears Appellees named the houses of the General Assembly and legislative leaders as respondents in their lawsuit, and Appellees secured a judicial determination that several of the Assembly's enactments were unconstitutional. Thus, the Legislature is a party litigant with a manifest interest in the outcome of the appeals, and we will entertain its arguments which, in any event, overlap substantially with those advanced by the Executive Appellants. As to the Executive Appellants, whose standing is challenged by the Appellee Weisblatt, they are subject to an explicit order of the Commonwealth Court requiring them to refrain from enforcing the provisions of Acts 46 and 26 and, thus, plainly are aggrieved.

At the outset, we observe that these appeals raise substantial justiciability concerns. Under Article VIII, Section 13 of the Pennsylvania Constitution, the General Assembly is charged with the obligation to adopt a capital budget for each fiscal year. *See* PA. CONST. art. VIII, §13. The process obviously entails a myriad of difficult policy decisions, among competing interests, in determining fiscal priorities and attendant allocations. Adoption of a budget, of course, would be a hollow act in the absence of an implementing mechanism, here, the Fiscal Code. Accordingly, the Legislature urges that it is a matter of necessity that it proceed via omnibus-style amendments to amend the Fiscal Code, as part of the annual budget process.

Given the impact on many and varied interests, *see, e.g.*, *supra* note 15, the omnibus approach facially appears to test the limits of the practical germaneness litmus which this Court conventionally applies to assess single-subject challenges. Moreover, without any limitations whatsoever, the practice would seem to be susceptible to the "logrolling" concern underlying Article III, Section 3's single-subject requirement. Accordingly, in an appropriate case, we may be required to determine whether judicial intervention is possible and/or appropriate and, if so, what may be the appropriate standards.

Nevertheless, we agree with Appellants and Judge Simpson that the appeals presently before us are not such cases. In the absence of a constitutionally-recognized, individual interest, the Legislature may sanction judicial redress or foreclose it. *Cf. Weaver v. Harpster*, 601 Pa. 488, 517, 975 A.2d 555, 572 (2009) ("[I]t is not the role of this court to create a private cause of action where the General Assembly has decided not to create a right or a remedy[.]"); *Estate of Witthoeft v. Kiskaddon*, 557 Pa. 340, 348, 733 A.2d 623, 627 (1999) ("This court will not engraft a private cause of action onto the statute without further guidance from the General Assembly."). In terms of adultBasic,

from the outset, the Legislature expressed the manifest intention that subscribers should have no claim against Commonwealth funds. *See* 35 P.S. §5701.1303(c). The Commonwealth Court, then, should not have permitted the legislative and executive branches to be haled into court based upon such prohibited claims. *Cf.* Jerry L. Mashaw & Dylan S. Calsyn, *Block Grants, Entitlements, and Federalism: A Conceptual Map of Contested Terrain*, 14 YALE J. ON REG. 297, 303 (1996) ("[E]ntitlements versus non-entitlements programs are distinguished in terms of beneficiaries' capacity to enforce their interest in the states' fulfillment of programmatic promises.").

The Commonwealth Court majority's dilutions of the operative non-entitlement language -- *e.g.*, "[n]othing under this section shall constitute an entitlement derived from the Commonwealth or a claim on any funds of the Commonwealth," 35 P.S. §5701.1303(c) -- are unpersuasive. As Judge Simpson explained, there simply is no sunset-based qualification upon these proscriptions, and it exceeds the judicial role to inject such a limitation. *See, e.g.*, *Frazier v. WCAB (Bayada Nurses, Inc.)*, 616 Pa. 592, 599, 52 A.3d 241, 245 (2012) ("When examining a statute, we are bound by its plain language; accordingly, we should not insert words into the [a]ct that are plainly not there."). Moreover, funds "of the Commonwealth" plainly are at the forefront of Appellees' claims, since the monies in issue derived from the master settlement agreement with tobacco product manufacturers, and the Commonwealth is the party-in-interest to such accord. *See* 35 P.S. §5673 (defining the "Master Settlement Agreement" as an agreement between "the Commonwealth" and leading tobacco product manufacturers). Furthermore, it is the Commonwealth which received the funds, as recognized in the TSA itself. *See id.* §5701.303(a) (repealed) (providing for the depositing in the Tobacco Settlement Fund of "all payments received by the Commonwealth pursuant to the Master Settlement Agreement"). Finally, like Judge

Simpson, we see no material difference between making a claim on funds of the Commonwealth and challenging the redirection of such monies to other fiscal priorities. *See Sears*, 49 A.3d at 488 (Simpson, J., dissenting) ("By whatever name, [Appellees] seek return of funds from the Commonwealth's General Fund back to an account where it will be available for the adultBasic program.").

As to the underlying legislative intent, when the General Assembly pronounced that the TSA's adultBasic provisions did not furnish a basis for a claim against Commonwealth funds, we believe that it expected that the Commonwealth should not be sued by subscribers relative to the program's receipt of such funds. In our view, the Legislature particularly would not have thought that persons with no entitlement to make a claim on Commonwealth funds could pursue an action in a court of law bringing the entire scheme for implementing the Commonwealth budget into question. Moreover, were we to ignore the statute's plain direction in this regard, the specter of litigation would serve as a substantial deterrent to the allocation of funding to non-entitlement programs.

Finally, we recognize that Appellees might qualify to seek judicial redress under the general principles of standing reflected in the *William Penn Parking Garage* decision, which recognizes as sufficient interests short of the possession of a legal claim. *See William Penn Parking Garage*, 464 Pa. at 202, 346 A.2d at 286. That decision, however, did not involve a scenario in which claims were explicitly prohibited by the Legislature.[18]

---

[18] In this regard, our present opinion is consistent with the decision in *Commonwealth v. Janssen Pharmaceutica, Inc.*, 607 Pa. 406, 8 A.3d 267 (2010). In that case, this Court recognized that the general standing principles fashioned by the judiciary may yield to the will of the General Assembly when the question is one of standing under a specific statutory regime. *See Janssen*, 607 Pa. at 420, 8 A.3d at 275.

In light of the absence, on Appellees part, of any entitlement to adultBasic benefits and the related statutory prohibition against the assertions of claims on funds of the Commonwealth, we hold that Appellees lacked standing to pursue the relief requested in their petitions for review.

The order of the Commonwealth Court is reversed and its opinions on preliminary objections and summary relief are vacated.


Former Chief Justice Castille did not participate in the decision of this case.

Messrs. Justice Eakin and Baer, Madame Justice Todd and Mr. Justice Stevens join the opinion.